**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 91-4340
Summary Calendar

KARL L. CANNON,

Petitioner,

versus

U.S. DEPARTMENT OF JUSTICE, UNITED
STATES PAROLE COMMISSION,

Respondent.

Appeal from the Determination of the
United States Parole Commission

(September 17, 1992)

On Petition for Rehearing

(Opinion May 19, 1992, 5th Cir. 1992_____F.2d____)
Before POLITZ, Chief Judge, KING and EMILIO M. GARZA, Circuit
Judges.

POLITZ, Chief Judge:

The United States Parole Commission seeks a rehearing, urging

that our panel decision erred in two separate respects: (1) in

holding that the Commission rather than the Bureau of Prisons must

take into account foreign good-time credits in computing a release

date, and (2) in holding that U.S.S.G. § 5G1.1(b) applies when the

foreign-court-imposed sentence exceeds the guideline range.

## Discussion

Although we deny the relief requested in the petition for rehearing, we believe that this infrequently visited area of the law would benefit from an explication of the interaction between the Constitution,[1] Prisoner Transfer Treaty (Treaty),[2] the Treaty-related legislation,[3] other relevant legislation,[4] federal regulations for the Parole Commission and the Bureau of Prisons,[5] other secondary interpretive sources,[6] Treaty-prisoner case law,[7]

---

[1]    U.S. Const. art. VI, cl. 2.

[2]    Treaty on the Execution of Penal Sentences, November 26, 1976, United States -- Mexico 20 UST 7399; T.I.A.S. No. 8718.

[3]    18 U.S.C. §§ 3244, 4100-4115.

[4]    18 U.S.C. § 3624(a) (release of prisoners), 18 U.S.C. § 3624(b) (satisfactory behavior credits), 18 U.S.C. § 4161 (good time credits) (repealed), and 18 U.S.C. §§ 4201-4218 (parole) (repealed).

[5]    28 C.F.R. §§ 0.95-0.99, 500-572 (Bureau of Prisons), 28 C.F.R. §§ 0.124-0.127 (United States Parole Commission), and 28 C.R.R. §§ 2.1-2.66 (Parole Regulations).

[6]    H.R. Rep. 95-720, 95th Cong., 1st Sess. 1977 reprinted in 1977 U.S.C.C.A.N. 3146 (although the Report discusses the pre-SRA version of the Treaty-related legislation, it is nonetheless highly persuasive).

[7]    **Malin v. U.S. Parole Com'n**, 901 F.2d 1112 (5th Cir. 1990) (table) (unpublished opinion); **Thorpe v. U.S. Parole Com'n**, 902 F.2d 291 (5th Cir.), cert. denied, _____ U.S. _____, 111 S.Ct. 185, 112 L.Ed.2d 148 (1990); **Hansen v. U.S. Parole Com'n**, 904 F.2d 306

and the distinction between pre-Sentencing Reform Act[8] (SRA) parole and post-SRA supervised release.

Treaty Provisions as the Supreme Law of the Land

Relevant Treaty provisions include:

Sentences **imposed** in the United Mexican States on nationals of the United States of America may be **served** in penal institutions or subject to the supervision of the authorities of the United States of America in accordance with the provisions of this Treaty.[9]

The Transferring State shall furnish the Receiving State a statement showing the offense of which the offender was convicted, the **duration of the sentence**, the length of time already served by the prisoner and any credits to which the offender is entitled, such as, but not limited to, work done, good behavior or pretrial detainment.[10]

Each Party . . . shall establish adequate procedures, to give for the purposes of this Treaty, legal effect, within its territory to sentences pronounced by the courts of the other Party.[11]

The Transferring State shall afford an opportunity to the Receiving State . . . to verify, prior to transfer, that the offender's consent to the transfer is given voluntarily and with full knowledge of the

_____

(5th Cir. 1990), cert. denied, _____ U.S. _____, 111 S.Ct. 765, 112 L.Ed.2d 784 (1991).

[8] The Sentencing Reform Act of 1984, Title II of the Comprehensive Crime Control Act of 1984, codified at 18 U.S.C. §§ 3551 *et seq*.

[9] Treaty, Article I(2) (emphasis ours).

[10] **Id.**, Article IV(7) (emphasis ours).

[11] **Id.**, Article IV(9).

<u>consequences thereof</u>. . . .[12]

Except as otherwise provided in this Treaty, the **completion** <u>of a transferred offender's sentence</u> shall be carried out according to the laws and procedures of the Receiving State, including the application of any provisions for the <u>reduction of</u> the term of <u>confinement</u> by parole, conditional release or otherwise.[13]

The Transferring State shall have <u>exclusive</u> jurisdiction over any proceedings, regardless of their form, intended to challenge, <u>modify</u>, or set aside sentences handed down by its courts.[14]

Article VI of the United States Constitution provides in pertinent part that a treaty shall be the supreme law of the land. Courts construe Treaties just as they do statutes.[15] These Treaty provisions clearly and unequivocally direct that the total time imposed in the foreign-court-imposed sentence shall be the sentence of the Treaty prisoner upon transfer.[16] A Commission proceeding which sets a release date varying the total foreign-court-imposed sentence would be a proceeding, albeit in the form of a release

---

[12]    **Id.**, Article V(1), second sentence (emphasis ours). <u>See</u> 18 U.S.C. § 4108(b)(1) (verifying officer <u>shall</u> inquire as to transferee's understanding and agreement that "only the [sentencing court] may modify or set aside the conviction or sentence."). <u>See</u>, <u>also</u>, <u>Report</u> at 25-26, 37, 41-44, <u>reprinted in</u> 1977 U.S.C.C.A.N. at 3148, 3159-3160, 3164-3166.

[13]    **Id.**, Article V(2) (emphasis ours).

[14]    **Id.**, Article VI, first sentence (emphasis ours).

[15]    <u>See</u> **United States v. Alvarez-Machain**, _____ U.S. _____, 112 S.Ct. 2188, 2193 (1992).

[16]    <u>Report</u> at at 41-43, <u>reprinted in</u> 1977 U.S.C.C.A.N. at 3164-3166.

4

date determination, which "modif[ies a] sentence handed down by [the Mexican] courts," contrary to Article VI and 18 U.S.C. § 3244(1).[17] Consistent therewith, the Commission may not authorize a release date which results in the total period of incarceration, plus the period of supervised release, being less than or greater than the total foreign-court-imposed sentence.

In discussing the constitutionality of 18 U.S.C. § 3244, Congress recognized the sovereignty issue inherent in such determinations:

> [N]either the United States nor any other country . . . would have acquiesced to a [Treaty] provision which would permit the courts of the Receiving State to set aside or modify a sentence imposed by the courts of the Transferring State. Otherwise the fundamental sovereignty of a nation over crimes committed within its territorial boundaries would be impaired. Report at 42, reprinted in 1977 U.S.C.C.A.N. at 3164-3165.

Treaty Article V(2) reinforces this conclusion, deeming applicable the laws of the United States which provide for a "reduction of the term of confinement by parole, conditional release or otherwise." The *in pari materia* meaning of Articles V(2) and VI is clear and unambiguous -- the term of confinement may be determined as

---

[17]     18 U.S.C. § 3244 is entitled "Jurisdiction of proceedings relating to transferred offenders."

    When a treaty is in effect between the United States and a foreign country providing for the transfer of convicted offenders --

    (1) the country in which the offender was convicted shall have exclusive jurisdiction and competence over proceedings seeking to challenge, modify, or set aside convictions or sentences handed down by a court of such country; . . .

5

permitted by United States law; therefore, only the sentencing court may change the <u>total</u> sentence imposed, <u>i.e.</u> confinement plus any conditional release.[18]  The prohibition against direct or collateral attacks upon the sentence in any court except the foreign sentencing court, however, does not otherwise preclude or suspend the transferee's right to seek a writ of habeas corpus on other matters related to the manner of execution of the sentence.[19]

<u>Treaty-related Legislation</u>[20]

Absent clear and express congressional intent to the contrary, Treaty-related legislation and regulations must be construed in harmony with their source, the Treaty.  Other general legislation and regulations which operate in tandem with the Treaty must also be construed in light of and consistently with the Treaty.  The relevant statutes and regulations include:

> Except as provided elsewhere in this section, an offender serving a sentence of imprisonment in a foreign country transferred to the custody of the Attorney General shall remain in the custody of the Attorney General under the same conditions and for the same period of time as an offender who has been committed to the custody of the Attorney General by a court of the United States for the period of time imposed by the sentencing

---

[18]   ***Inclusio unius est exclusio alterius***.  Treaty, Article VI, first sentence.

[19]   <u>Report</u> at 25-26, 27, 41-43, <u>reprinted in</u> 1977 U.S.C.C.A.N. at 3148, 3149-50, 3164-3166.

[20]   See <u>Report</u>, *passim*.

court.[21]

(1)  The transferred offender shall be entitled to all credits for good time, for labor, or any other credit toward the service of the sentence which had been given by the transferring country for the time served as of the time of transfer.  Subsequent to the transfer, the offender shall in addition be entitled to credits toward service of sentence for satisfactory behavior, computed on the basis of the time remaining to be served at the time of the transfer and at the rate provided in section 3424(b) of this title for a sentence of the length of the total sentence imposed and certified by the foreign authorities.  These credits shall be combined to provide a release date for the offender pursuant to section 3624(a) of this title.[22]

(1)(A)  The United States Parole Commission shall, without unnecessary delay, determine a release date and a period and conditions of supervised release for an offender transferred to the United States to serve a sentence of imprisonment, as though the offender were convicted in a United States district court of a similar offense.
(B)  In making such determination, the United States Parole Commission shall consider --
(i) any recommendation of the United States Probation Service, including any recommenda- tion as to the applicable guideline range; and
(ii) any documents provided by the transferring country;
relating to that offender.
(C)  The combined periods of imprisonment and supervised release that result from such determination shall not exceed the term of imprisonment imposed by the foreign court on that offender.[23]

The Commission urges as controlling its interpretation of the statutes relating to the respective roles of the Commission and the

---

[21]    18 U.S.C. § 4105(a).

[22]    18 U.S.C. § 4105(c)(1).

[23]    18 U.S.C. §§ 4106A(b)(1)(A)-(C).

7

Bureau of Prisons in the determination of a post-SRA Treaty-prisoner's release date. The Commission suggests that 18 U.S.C. § 4106A only requires the Commission to determine a discretionary release date and that it must do so without respect to the 18 U.S.C. § 3624(b) satisfactory-behavior credit. The Commission then posits that 18 U.S.C. § 4105 requires the Bureau of Prisons to establish a mandatory release date which takes into account the section 3624(b) credits as provided by section 3624(a).

The Commission cites no controlling authority for this purported division of authority respecting determination of release dates for a Treaty prisoner. Contrary to the Commission's urging, **Malin** is inapposite. In dictum the **Malin** court acknowledged the Commission's position that "the computation of good time credits is the responsibility of the U.S. Bureau of Prisons. 28 C.F.R. §§ 0.96(h), 527.45(a)(2) (1989)." This dictum is correct but only for a pre-SRA prisoner. The **Malin** dictum cites to parole and good-time credit provisions which were repealed concurrently with the enactment of the Sentencing Reform Act,[24] none of which are applicable to a post-SRA prisoner such as Malin. Malin, however, was eligible both for foreign credits under the Treaty and for the satisfactory behavior credit under section 3624(b).

Section 4106A(b)(1)(A) expressly obliges the Commission, and

---

[24] Act of Oct. 12, 1984, P.L. 98-473, Title II, Ch. II, § 218(a)(4), 98 Stat. 2027, effective on the first day of the first calendar month beginning 36 months after enactment as provided by § 235(a)(1) of such Act, as amended, which appears as 18 U.S.C. § 3551 note.

<u>not</u> the Bureau of Prisons, to make the release date determination. Section 4105(c)(1) requires that the release date include the section 3624(b) satisfactory-behavior credits as computed in section 3624(a) but does not delegate the determination of the release date to the Bureau of Prisons. We conclude that the Commission's argument that the release date referred to in section 4106A is not the same release date referred to in section 4105 lacks merit.[25]

We perceive that the Commission views its statutory obligations toward Treaty prisoners as one similar to its pre-SRA prisoner obligation to determine an <u>initial</u>, discretionary parole date in conjunction with the Bureau of Prison's statutory obligations to release a prisoner on his actual release date.[26] If we are correct in this perception, the Commission misapprehends its statutory duty under the Treaty-related legislation. The Treaty-related statute commits mandatory release date determinations to the Commission. Consistent with that obligation, the Commission has adopted a regulation for Treaty prisoners which expressly provides for permanent retention of Commission jurisdiction over release date determinations.

> The jurisdiction of the Parole Commission to set a release date and periods and conditions of supervised release extends until the transferee is released from prison or the transferee's case is otherwise transferred to a district court pursuant to an order of the

---

[25]    <u>See</u> 28 C.F.R. §§ 2.62(a)(2), (k) (1991), discussed <u>*infra*</u>.

[26]    <u>See</u> 28 C.F.R. § 0.96b (1991).

9

Commission.  28 C.F.R. § 2.62(a)(2). Consistent with the Commission's retention of jurisdiction, 28 C.F.R. § 2.62(k) provides for reopening or modification of a determination prior to transfer or termination of jurisdiction. The Commission's argument that the Bureau of Prisons has authority to make a release date determination for a Treaty prisoner is inconsistent with its own regulation.  We accordingly reject it.

The Commission states in its petition for rehearing that it has recently adopted an interpretive regulation to which we should defer.  This revision would add a sentence to 28 C.F.R. § 2.62(a)(1) providing that "U.S. Code provisions requiring mandatory minimum terms or minimum periods of supervised release shall not apply to prisoners transferred pursuant to treaty who are serving terms of imprisonment imposed by foreign courts for violating foreign law."[27]  Although we are very dubitante that this substantive regulation amending the guidelines as applied to Treaty prisoners would withstand judicial scrutiny under our holding herein, we need not reach that question.  Our research has revealed that the Commission did not promulgate this regulation in accordance with the law, and, hence, it has no legal effect.[28]

We hold that section 4106A(b) _requires_ the Commission to make

---

[27]   Memorandum from the Office of the Chairman of the U.S. Parole Commission, dated May 29, 1992, subject matter -- Minutes - U.S. Parole Commission's Open Business Meeting, April 28-30.

[28]   18 U.S.C. § 4201(6) (Substantive Commission regulations shall be promulgated pursuant to 18 U.S.C. § 4203 and 5 U.S.C. § 553).

a timely, mandatory release date determination and that the jurisdiction to make a redetermination in light of changed circumstances remains exclusively with the Commission.[29]  Any perceived inconvenience or difficulty with this scheme is more appropriately addressed to the Congress.

Total Sentence Less than Foreign-Court-Imposed Sentence

The Commission urges that the language of 18 U.S.C. § 4106A(b)(1)(C) which provides that "[t]he combined periods of imprisonment and supervised release that result from [the Commission's] determination shall not exceed the term of imprisonment imposed by the foreign court on that offender" authorizes a release date determination that results in a total sentence which is less than the foreign-court-imposed sentence. While we agree that the statute may be susceptible of such a reading, when construed in light of the Treaty it becomes apparent that section 4106A(b)(1)(C) is merely a codification of Treaty Article V(3).  The statute does not address the issue of variation of foreign-court-imposed sentence because Treaty Article VI and 18 U.S.C. § 3244(1)[30] otherwise foreclose that issue and we cannot

---

[29]   Accord, 28 C.F.R. § 2.62(a)(2).  See discussion infra at note 25 and following.

[30]   Report at 41-44, reprinted in 1977 U.S.C.C.A.N. at 3164-3166.

construe the statute as contrary to the Treaty.[31]

In **Thorpe** and **Malin** we affirmed Commission release date computations which resulted in total sentences slightly less than the total foreign-court-imposed sentence. In doing so we inadvertently erred in affirming inappropriate applications of section 4106A(b)(a)(C). In neither case, however, did the appellant challenge the Commission's legal authority to deviate from the total sentence imposed by the Mexican courts.[32] Those cases are therefore inapposite and not controlling herein.

Will Cannon Now Spend an Extra Three Months in Prison?

The Commission also suggests in its rehearing petition that "as a result of this decision, [Cannon will] spend an extra three months in federal prison." In reaching this conclusion the Commission evidences a fundamental misunderstanding of the meaning of a guidelines range determination for a Treaty prisoner. A guideline range determination is a starting point. The Commission has the power and the authority under the Treaty, Treaty-related legislation, and the guidelines to set <u>any</u> release date from incarceration <u>as long as</u> adequate reasons[33] support the decision to

---

[31] **Lem Moon Sing v. United States**, 158 U.S. 538, 15 S.Ct. 967, 39 L.Ed. 1082 (1895).

[32] In **Hansen**, *supra*, we affirmed a Commission release date computation that exactly matched the 84-month total sentence imposed by the Mexican courts.

[33] **Williams v. United States**, 503 U.S. _____, 112 S.Ct. 1112, 1118, 117 L.Ed.2d 341, 352 (1991).

12

depart from the guideline range[34] on the record, and the <u>total</u> of the term of incarceration and supervised release equals the foreign-court-imposed sentence. Therefore, contrary to the Commission's assertion, our panel decision need not increase by a single day the term of incarceration served by Cannon or any other Treaty prisoner. That determination is and remains the responsibility of the Commission.

<u>Application of Pre-Transfer Credits</u>

We expressly hold, for sake of clarity, that any pre-transfer credits applicable to a Treaty prisoner's term of incarceration, including but not limited to work done, good behavior, or pretrial confinement,[35] <u>shall</u> be applied <u>only</u> to the original foreign-court-imposed sentence by the Commission when making a release date determination. Having done this, the Commission is free to determine a release date as discussed above.

<u>Harmless Error and Commission Release Date Determinations</u>

The guidelines apply to Treaty prisoners whose offense of

---

[34] <u>See</u> U.S.S.G. § 5K2.0 (p.s.). <u>See</u>, <u>also</u>, U.S.S.G, Chapter One - Introduction and General Principles, Part A, § 4(b) <u>Departures</u>.

[35] Treaty, Article IV(7).

13

conviction occurred after November 1, 1987.[36]  In **Williams v. United States** the Supreme Court held that an error in the application of the guidelines need not result in a remand to the sentencing court if the court of appeals determines that the same sentence would have been imposed absent the error.

We have not previously considered the applicability of **Williams** to a Commission release date determination.  We now hold that the analysis of the **Williams** decision applies directly to a Commission release date determination and, therefore, the Commission release date determination may be reviewed for harmless error.  In the case at bar, however, because we cannot ascertain from the record whether the Commission properly determined Cannon's release date in light of his potential section 3624(b) satisfactory behavior credits, we cannot conclude that the error was harmless.  That precipitated our remand order for a redetermination of Cannon's release date.

## Application of U.S.S.G. § 5G1.1(b) to Commission Determination

We begin this part of our discussion by recognizing that the congressional decision to use the sentencing guidelines to direct a Commission release date determination creates an imperfect fit at best.  Nonetheless, Congress so chose and it is our constitutional task to apply the guidelines in the manner which best comports with that choice.

---

[36]  18 U.S.C. § 4106A(c); **Hansen**, 904 F.2d at 308.

14

In our original consideration of the application of U.S.S.G. § 5G1.1(b), we did not write on a *tabula rasa*. Rather, we began by considering our circuit precedent in **Thorpe**, and found it binding and persuasive. The **Thorpe** court held that in an instance in which a Treaty prisoner had a foreign-court-imposed sentence of 84 months, where the guideline range computed to 151-188 months, the Mexican court sentence would be deemed the statutory maximum sentence under U.S.S.G. § 5G1.1(a). Uniformity and stability require that each panel of our court be bound by the decisions of prior panels, absent an intervening *en banc* or Supreme Court decision, or relevant legislation.[37]

In the case at bar Cannon had a foreign-court-imposed sentence of 84 months. Were this an offense committed in the United States, his guideline range would have been 51-63 months. Following the lead in **Thorpe**, we applied U.S.S.G. § 5G1.1(b) and deemed the foreign-court-imposed sentence to be the statutory minimum. On rehearing, the Commission laments the fact that our holding will require a prisoner whose guideline range "is less than the foreign sentence . . . to serve their entire full sentence less good time."[38] This argument underscores the Commission's confusion about its role under the Treaty and related legislation and the concept of departure under the guidelines.

---

[37]  See **Johnson v. McCotter**, 804 F.2d 300 (5th Cir. 1986), cert. denied, 481 U.S. 1042, 107 S.Ct. 1988, 95 L.Ed.2d 827 (1987).

[38]  Emphasis ours.

15

The Commission, consistent with Article V(2) of the Treaty, may establish any release date that it deems appropriate under the guidelines.[39] The Commission's statutory mandate -- to employ the guidelines to establish the release date "as though the offender were convicted of a similar offense" --[40] evinces the congressional intent to assure the equal treatment of similarly situated Treaty and non-Treaty prisoners with respect to the term of incarceration.[41] Nonetheless, the express terms of the Treaty limit this congressional intent and the Commission is not free to vary the total sentence of a Treaty prisoner.[42]

Applying U.S.S.G. § 5G1.1(a) or (b) to establish the guideline range is consonant with international comity considerations of giving respect to the foreign-court-imposed sentence as expressly provided for in the Treaty. If the Commission determines that a downward departure is warranted, the very fact that the guidelines were not designed with Commission release date determinations for Treaty prisoners in mind may, without more, support a departure.[43] We also observe that by applying U.S.S.G. § 5G1.1(b), we avoid the

---

[39]    18 U.S.C. § 4106A(b)(1)(A); **Hansen**, 904 F.2d at 308.

[40]    18 U.S.C. § 4106A(b)(1)(A).

[41]    See Report at 36, reprinted in 1977 U.S.C.C.A.N. at 3159.

[42]    "Total" in the sense of time of incarceration and supervised release.

[43]    U.S.S.G. § 5K2.0.

16

potential confusion that might arise if we did not follow the lead of the **Thorpe** court.

The Commission also complains in its petition for rehearing that we implicitly modified U.S.S.G. § 5G1.1(b) to equate a foreign-court-imposed sentence with a "sentence required by statute." It is well settled that a Treaty which operates of itself without aid of legislation is the equivalent of an Act of Congress.[44] Treaty Article X(2) provides that the "treaty <u>shall</u> enter into force thirty days after the exchange of ratifications. . . ."[45] Generally speaking, the Treaty-related legislation merely provides a convenient codification of the already effective Treaty provisions.[46] Aside from the ministerial task of appointing an "Authority" to receive transferred prisoners, the Treaty <u>required</u> no legislative action other than ratification.[47] Procedural legislation which makes operation of a Treaty more convenient cannot amend or abrogate a self-executing Treaty.[48] Accordingly, with respect to U.S.S.G. § 5G1.1, a foreign-court-imposed sentence

---

[44] **Fellows v. Blacksmith**, 60 U.S. 366, 15 L.Ed. 684 (1857).

[45] Treaty, Article X(2) (emphasis ours).

[46] <u>Accord</u>, **id.**, Article IV(9).

[47] <u>Report</u> at 25-26, <u>reprinted in</u> 1977 U.S.C.C.A.N. at 3147-3148.

[48] **Cook v. United States**, 288 U.S. 102, 53 S.Ct. 305, 77 L.Ed. 641 (1933); **Chew Heong v. United States**, 112 U.S. 536, 5 S.Ct. 255, 28 L.Ed. 770 (1884).

is in fact one imposed by the equivalent of an Act of Congress.

The Parade of Horribles

Like Congress,[49] we are mindful of the theoretical possibility that a foreign court might impose a sentence upon a prisoner more onerous than that imposed by our courts for the same or a similar offense. For example, a foreign court might impose a 50-year sentence for an offense that would reap a five-year sentence under our law. If the offender were then transferred under the Treaty, the Commission could set any guideline-supported release date for that prisoner, including immediate supervised release if appropriate. The Treaty, however, would require that the offender serve the remainder of the 50-year sentence on supervised release. This result reflects a Treaty-imposed limitation upon the congressionally-created fiction that the Commission should treat a Treaty prisoner's foreign sentence as one imposed by an American court for the same or similar offense. In the instance of this theoretical "horrible," a true guideline sentence and a Treaty-guideline sentence would undoubtedly differ.

We observe that Cannon is not a victim of this theoretical "horrible." His similar offense of conviction, 21 U.S.C. § 841(b)(1)(B)(vii), with an offense level of 24, and a criminal history category I, yielded a guideline range of 51-63 months of incarceration. Guideline section 5D1.1(a) requires 36-60 months of

---

[49]    Report at 36, reprinted in 1977 U.S.C.C.A.N. at 3159.

supervised release.   It is readily apparent, therefore, that the Commission could fashion a release date determination and supervised release period so that Cannon's total foreign-court-imposed sentence is served as a combination of a term of incarceration and a term of supervised release.

Regardless of what may be said of the result in the extreme theoretical case which we have suggested above, as a court of law we are bound by the Treaty.   If this theoretical "horror" is perceived to be intolerable, it is a matter more appropriately committed to our coequal branches to correct.


## Conclusion

For the reasons stated herein, the petition for rehearing is DENIED.