**Comfort ASARE, Reg. No. 03671–000, Petitioner,**

v.

**UNITED STATES PAROLE COMMISSION, Respondent.**

**No. 92–2149.**

United States Court of Appeals, Fourth Circuit.

Argued May 3, 1993.

Decided Aug. 20, 1993.

Leonard A. Kaplan, Asst. Federal Public Defender, Charleston, WV, argued (Hunt L.

Charach, Federal Public Defender, on brief), for petitioner.

Michael Alexander Stover, Gen. Counsel, U.S. Parole Comm'n, Chevy Chase, MD, argued (Richard K. Preston, on brief), for respondent.

Before ERVIN, Chief Judge, and MURNAGHAN and NIEMEYER, Circuit Judges.

## OPINION

NIEMEYER, Circuit Judge:

Comfort Asare, a naturalized citizen of the United States born in Accra, Ghana, was arrested on October 27, 1989, at Gatwick Airport in London, England, while *en route* from Ghana to Washington, D.C., when British customs authorities discovered 486 grams of diamorphine (heroin) in the lining of her handbag. She was convicted in England of attempting to import heroin and sentenced to a six-year term of imprisonment. On March 19, 1990, after receiving her sentence, Asare invoked the Convention on the Transfer of Sentenced Persons, a 1983 treaty to which both the United States and the United Kingdom are signatories, in order to be transferred to the United States (Southern District of West Virginia) to serve her sentence. Under the treaty, the country receiving a sentenced person may convert the sentence to conform to the laws of that country. In this case that was done by the United States Parole Commission under the authority of 18 U.S.C. § 4106A, but the Parole Commission refused to apply credits for good behavior earned by Asare in England and expected to be earned by her under the laws of the United States, leaving that function to the United States Bureau of Prisons.[1] Asare appeals from the decision of the Parole Commission to this court pursuant to 18 U.S.C. § 4106A(b)(2)(A). We affirm.

While this is an issue of first impression for this court and its resolution is not without complexity, our decision follows directly from the treaty and statutes involved. The United States and the United Kingdom are parties to the Convention on the Transfer of Sentenced Persons, Council of Europe, done March 21, 1983 (effective in the U.S. July 1, 1985) — U.S.T. ——, T.I.A.S. 10824, which affords sentenced foreigners the opportunity "to serve their sentences within their own society." By the terms of the treaty, a foreigner "sentenced in the territory of a Party may be transferred to the territory of another Party ... in order to serve the sentence imposed on him." Art. 2, § 2. To facilitate execution of the sentence in the receiving country (the "administering State"), the treaty permits the administering State either to "continue the enforcement of the sentence" imposed or to "convert the sentence, through a judicial or administrative procedure, into a decision of that State." Art. 9, § 1. The treaty provides limitations on converting sentences, including the requirements that the administering State credit the sentenced person with the full period of time served in the sentencing State and that it not increase the original sentence. Art. 11, § 1.

Implementing the treaty, Congress enacted Chapter 306 of Title 18, §§ 4100–4115, authorizing the Attorney General to receive and maintain custody of any sentenced person transferred pursuant to the treaty "under the same conditions and for the same period of time" as if that person had been given the same sentence by a district court of the United States. *See* 18 U.S.C. §§ 4105(a) & 4102. So that the foreign sentence can be administered under the laws of the United States, the statute directs the United States Parole Commission to convert the sentence to a decision of that Commission and determine a "release date," together with the period and conditions of supervised release. 18 U.S.C. § 4106A(b)(1)(A).[2] The total period of incarceration determined by establishment

---

**1.** The Bureau of Prisons has credited Asare with good time credits, but Asare apparently disagrees with the release date established by the Bureau of Prisons after applying the credits.

**2.** Section 4106A(b)(1)(A) provides:

The United States Parole Commission shall, without unnecessary delay, determine a release date and a period and conditions of supervised release for an offender transferred to the United States to serve a sentence of imprisonment, as though the offender were convicted in a United States district court of a similar offense.

of the release date together with any period of supervised release, however, must not exceed the original sentence. 18 U.S.C. § 4106A(b)(1)(C). Under the treaty and this statutory scheme, the Parole Commission does not impose a new sentence, but rather converts the original sentence into one that can be administered under the laws of the United States.

For purposes of such proceedings, Congress intended to put the Parole Commission in a position analogous to that of a United States district court relative to the sentenced person. *See* 18 U.S.C. § 4106A(b)(1)(A).[3] Thus, the sentenced person is given a hearing much like a sentencing hearing, from which she can appeal to a United States court of appeals. Since the Parole Commission does not sentence, but only converts a foreign sentence, its decision takes the form of a "release date" determination. But § 4106A refers to this "determination" operating "as though" it were a sentence. *See, e.g.,* 18 U.S.C. §§ 4106A(b)(1)(A) & 4106A(b)(2)(B). Once the foreign sentence has been converted by the "determination" of the Parole Commission, it is thereafter executed in every other respect as if it were a United States sentence.

The sentenced person is entitled to receive good time credits earned both in the foreign country before transfer and in the United States after transfer. *See* 18 U.S.C. § 4105(c)(1).[4] These credits are combined and applied to establish a release date pursuant to 18 U.S.C. § 3624(a). This release date, however, is different from that established under § 4106A and is one assigned to all federal inmates. The release date provided for in § 4106A is the mechanism for converting a foreign sentence to a United States

decision without actually resentencing, whereas the release date under § 4105(c)(1) is a further adjustment that is to be made under the procedures of 18 U.S.C. § 3624(a) to accommodate good time credits. Responsibility for applying and administering good time credits under 18 U.S.C. § 3624(a) is conferred on the United States Bureau of Prisons and therefore it is the Bureau of Prisons that establishes a release date that takes good time credits into account. As § 3624 provides:

> (a) Date of Release—A prisoner shall be released by the Bureau of Prisons on the date of the expiration of his term of imprisonment, less any time credited toward the service of his sentence as provided in subsection (b).

Subsection (b) continues by describing how the Bureau of Prisons applies credits.

Asare contends that because the Parole Commission is given the responsibility of establishing a release date under § 4106A, it must also take into account good time credits because § 4105(c)(1) directs that good time credits must be applied in establishing a release date. Moreover, she notes that if the Parole Commission does not apply the credits correctly, she can appeal that decision to this court under § 4106A(b)(2)(A), providing review of determinations by the Parole Commission in the United States courts of appeals.

■ As we have noted, the release date of § 4106A is fixed by the Parole Commission when converting the sentence and a different release date is derived under § 4105(c)(1) by the Bureau of Prisons' application of good time credits. While it is readily apparent

---

3. *See also* 134 Cong.Rec. 33,302 (Oct. 21, 1988):

> The phrase [in § 4106A(b)(1)(A)] "as though the offender was convicted in a United States district court of a similar offense" puts the Parole Commission, with regard to a prisoner who transfers to the United States for the service of sentence, in the position of a United States district court relative to a convicted defendant.

4. Section 4105(c)(1) provides:

> The transferred offender shall be entitled to all credits for good time, for labor, or any

other credit toward the service of the sentence which had been given by the transferring country for time served as of the time of the transfer. Subsequent to the transfer, the offender shall in addition be entitled to credits toward service of sentence for satisfactory behavior, computed on the basis of the time remaining to be served at the time of the transfer and at the rate provided in section 3624(b) of this title for a sentence of the length of the total sentence imposed and certified by the foreign authorities. These credits shall be combined to provide a release date for the offender pursuant to section 3624(a) of this title.

that the statute confers authority on the Parole Commission to convert sentences of persons transferred from foreign countries under the treaty, it also appears that the statute sought to treat those persons, to the extent permitted by the treaty, the same as persons who have been sentenced by a United States district court under the criminal laws of the United States. At numerous places within the statute, this analogy is articulated. *See, e.g.,* 18 U.S.C. §§ 4105(a), 4106A(b)(1)(A), 4106A(b)(2)(B), and 4115. Thus, once the Parole Commission completes its task of converting the foreign sentence to a surrogate United States sentence by establishing an initial release date based on the foreign sentence, further duties of applying good time credits and otherwise administering the incarceration of the defendant are carried out by the Bureau of Prisons as would be the case for a person sentenced by a United States district court. It is not remarkable, therefore, that § 4105(c)(1) directs that good time credits be applied under § 3624(a), which specifies that it be done by the Bureau of Prisons.

■ Although we are satisfied that the treaty and applicable statutes explicitly establish the scheme as we have described it, we note that the Department of Justice, the Parole Commission, and the Bureau of Prisons have reached the same conclusion. *See* 28 C.F.R. § 2.62; 28 C.F.R. § 527.45(d); Fed. Bureau of Prisons, U.S. Dept. of Justice, Operations Memorandum No. 156–91 (July 15, 1991); Fed. Bureau of Prisons, U.S. Dept. of Justice, Program Statement 5880.28 (Feb. 21, 1992). When statutes charge agencies with the responsibility of administering a statutory scheme, the agencies' reasonable interpretations of the statute that they are applying are entitled to deference. *See Howe v. Smith,* 452 U.S. 473, 485, 101 S.Ct. 2468, 2476, 69 L.Ed.2d 171 (1981). Moreover, since this case was briefed, two other United States courts of appeal have interpreted the Commission's authority under § 4106A in fashion similar to that which we now adopt. *See Ajala v. United States Parole Com'n,* 997 F.2d 651 (9th Cir.1993) ("[T]he calculation and award of foreign and domestic [good time] credits is not part of the [Parole] Commission's § 4106A determi-

nation, but is a matter for the Bureau of Prisons."); *Trevino–Casares v. United States Parole Com'n,* 992 F.2d 1068 (10th Cir.1993) (same). *But see Cannon v. United States Dep't of Justice,* 961 F.2d 82 (5th Cir.), *reh'g denied,* 973 F.2d 1190 (1992), *cert. denied,* — U.S. ——, 113 S.Ct. 2354, 124 L.Ed.2d 262 (1993).

■ In this case, Asare was sentenced in England to six years. After she obtained a transfer to the United States pursuant to the Convention on the Transfer of Sentenced Persons, the United States Parole Commission properly converted her sentence to a "decision" of the United States. *See* Treaty, Art. 9, § 1(b). After receiving a post-sentence investigation report and conducting a hearing, the Parole Commission applied the United States Sentencing Guidelines to establish that Asare's offense level was 26 (a level 28 for importing 486 grams of heroin, reduced by two levels for acceptance of responsibility) and that her criminal history category was I, resulting in a Sentencing Guideline range of 63–78 months. The Parole Commission departed downward by three months and determined that Asare be released after serving a total of 60 months. Since Asare was arrested in England on October 27, 1989, and remained in custody thereafter, the Parole Commission established her release date under 18 U.S.C. § 4106A(b)(1)(A) as October 24, 1994, 60 months after her arrest. The remainder of her original six-year sentence, a twelve-month period, was imposed as the period of supervised release. The Parole Commission refused to apply any good time credits under § 4105(c)(1) and left that to the Bureau of Prisons since that is the agency given the responsibility of doing so under § 3624(a) for defendants sentenced by a United States district court. The Bureau of Prisons then applied her credits.

Asare challenges only the refusal of the Parole Commission to apply good time credits, and we affirm the Commission's refusal to do so. Our decision does not reach any determination of what good time credits are to be applied and whether they have been applied correctly. That issue is left to the

Bureau of Prisons to determine. If Asare is dissatisfied by the release date established by the Bureau of Prisons, she can exhaust the administrative remedies that may be available, and, if she remains dissatisfied, she can apply to a United States district court for a writ of habeas corpus, which ultimately can be appealed to a court of appeals.

*AFFIRMED.*