[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10849
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-01533-JPB


BERTHA ANDREWS,

                                                        Plaintiff,

DENORRIS ANDREWS,
JAMES ANDREWS,
c/o Clarence Andrews, Ward,

                                                        Plaintiffs – Appellants,

                              versus

SECRETARY, DEPARTMENT OF
VETERANS AFFAIRS,
GOVERNOR FOR THE STATE OF
GEORGIA,
on Behalf of the Georgia General
Assembly,
KAREN C. GAINEY, ESQ.,
individually,

                                                        Defendants - Appellees,

PROBATE JUDGE,
on behalf of the Probate Court of
Fulton County,

Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 11, 2021)

Before WILSON, MARTIN, and GRANT, Circuit Judges.

PER CURIAM:

Plaintiffs DeNorris Andrews and James Andrews appeal the district court's

dismissal of their complaint based on sovereign immunity and lack of subject

matter jurisdiction.  Plaintiffs' claims stem from alleged overpayments that the

Department of Veterans Affairs (VA) authorized to a fiduciary responsible for

distributing VA benefits.  Because Congress has broadly precluded judicial review

of decisions necessary to VA benefits determinations, the district court lacked

subject matter jurisdiction to decide Plaintiffs' claims.  Therefore, we affirm.

## BACKGROUND

Plaintiffs were the legal guardians of their brother, Clarence Andrews, an

incapacitated Vietnam War veteran.[1]  Defendant Karen Gainey was appointed as

_____

[1] Plaintiffs filed a motion on November 20, 2019, notifying the district court that Clarence
Andrews is now deceased.  The motion also stated that Bertha Andrews, Clarence's mother and a

the fiduciary in charge of Andrews's VA benefits.  For her services, Gainey

collected a commission amounting to five percent of Andrews's benefits, which is

permissible under Georgia law.  *See* O.C.G.A. § 29-7-15.  However, Plaintiffs

allege that Gainey's commission was one percent higher than what the Secretary of

Veterans Affairs can authorize because federal law limits commissions to four

percent.  *See* 38 U.S.C. § 5502(a)(2).

Plaintiffs sued three defendants: (1) Secretary Robert Wilkie (2) Gainey, and

(3) Governor Brian Kemp.  The district court first dismissed Plaintiffs' claim

against Secretary Wilkie, finding that it was barred by sovereign immunity.  In a

subsequent order, the district court dismissed Plaintiffs' claims against Gainey and

Governor Kemp for lack of subject matter jurisdiction.  This appeal followed.

## STANDARD OF REVIEW

We review de novo a district court's dismissal for lack of subject matter

jurisdiction.  *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015).

## DISCUSSION

Federal courts are courts of limited jurisdiction.  *Univ. of S. Alabama v. Am.*

*Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999).  "They are empowered to hear

only those cases within the judicial power of the United States as defined by

---

named plaintiff, is now deceased.  Plaintiffs' motion asked the court to allow Denorris Andrews
and James Andrews to continue this action as administrators of Clarence's estate.

3

Article III of the Constitution, and which have been entrusted to them by a jurisdictional grant authorized by Congress." *Id.* (internal quotation marks omitted). When interpreting statutes establishing jurisdiction, "federal courts should proceed with caution." *Id.* (internal quotation marks omitted). The presumption is that a claim lies outside a federal court's jurisdiction, "and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Bishop v. Reno*, 210 F.3d 1295, 1298 (11th Cir. 2000).

Through the Veterans' Judicial Review Act (VJRA), Congress created an exclusive scheme for the review of claims affecting veterans' benefits. Under the VJRA, "the Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans." 38 U.S.C. § 511(a). Determinations by the Secretary may be appealed exclusively to the Board of Veterans' Appeals. *Id.* § 7104(a). The Board's decisions may be appealed to the Court of Appeals for Veterans Claims, an Article I tribunal created by the VJRA. *Id.* §§ 7251, 7252(a). And decisions of the Court of Appeals for Veterans Claims are appealable solely to the Federal Circuit. *Id.* § 7292(c). The Federal Circuit has "exclusive jurisdiction to review and decide any challenge to the validity of any statute or regulation or any interpretation thereof brought under this section, and to interpret constitutional and statutory provisions, to the extent

4

presented and necessary to a decision." *Id.* Because the VJRA establishes an exclusive regime, district courts are divested of jurisdiction where the VJRA applies.

The VJRA is broad. *See Anestis v. United States*, 749 F.3d 520, 525 (6th Cir. 2014). Indeed, "courts have consistently held" that its scope extends to constitutional or tort claims "whose resolution would require the court to intrude upon the VA's exclusive jurisdiction." *Price v. United States*, 228 F.3d 420, 422 (D.C. Cir. 2000) (per curiam); *see also Hicks v. Small*, 69 F.3d 967, 970 (9th Cir. 1995) (holding that district courts lack jurisdiction to hear challenges to benefits determinations, even if those challenges are framed as tort law claims); *Sugrue v. Derwinski*, 26 F.3d 8, 11 (2d Cir. 1994) (holding that "the courts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms"). The VJRA's applicability—and conversely a district court's jurisdiction—depends on the gravamen of the claim, rather than its label. The question, then, is whether the gravamen of Plaintiffs' claims places them within the scope of the VJRA. If so, the district court lacked jurisdiction. We take Plaintiffs' claims against each defendant in turn.

First, as to Secretary Wilkie, Plaintiffs seek damages, costs, and attorney's fees under the Federal Tort Claims Act (FTCA). The FTCA allows plaintiffs to sue the United States Government in tort for injuries "caused by the negligent or

5

wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1). Plaintiffs allege that the VA breached its duty under two VA regulations: 38 C.F.R. §§ 13.1 and 13.3. Specifically, Plaintiffs allege that the VA failed "to communicate with Georgia officials and to monitor and oversee Georgia legislation." The result, Plaintiffs argue, is that Andrews did not receive the full benefits he was entitled to because the Secretary negligently allowed Andrews's fiduciary to collect a five percent payment under Georgia law, rather than a four percent payment—the maximum allowed under 38 U.S.C. § 5502(a)(2).

Section 5502, which governs payments to and supervision of fiduciaries, is a law affecting the provision of veterans' benefits. *Id.* § 5502; *see Evans v. Greenfield Banking Co.*, 774 F.3d 1117, 1121, 1124 (7th Cir. 2014). It gives the Secretary the power to appoint a fiduciary, and—if it is in the best interest of the beneficiary—to authorize the fiduciary to receive a commission of up to four percent of the veteran's benefits. 38 U.S.C. § 5502(a)(2). The Secretary cannot authorize a fee under Section 5502 if the fiduciary receives "any other form of remuneration or payment in connection with rendering fiduciary services for benefits . . . on behalf of the beneficiary." *Id.* And importantly, the Secretary has discretion to supervise the fiduciary. *Id.* § 5502(b). "Whenever it appears that any fiduciary, in the opinion of the Secretary, . . . has collected or paid . . . fees,

6

commissions, or allowances that are inequitable or in excess of those allowed by law for the duties performed or expenses incurred," the Secretary may suspend payments to the fiduciary or take other appropriate action. *Id.*

Here, Plaintiffs style their claim against Secretary Wilkie as an FTCA claim. But when Plaintiffs argue that the Secretary negligently allowed Gainey to receive excess payments, they raise a question "necessary" to the Secretary's determination under Section 5502. 38 U.S.C. § 511(a). In other words, Plaintiffs' claim requires us to review VA decisions that affect the provision of benefits. *Id.* Therefore, under the VJRA, the proper avenue to challenge the Secretary's decision is through the Board of Veterans' Appeals. Consequently, the district court was without jurisdiction to decide Plaintiffs' FTCA claim.

Next, we consider the bevy of tort law claims Plaintiffs raise against Gainey: (1) constructive trust, (2) conversion, (3) bad faith, (4) willful misconduct, (5) removal of fiduciary, and (6) breach of fiduciary duty. The basis for these claims is that Gainey collected a commission in excess of what federal law permits, thereby depriving Andrews of VA benefits he was entitled to. Gainey responds that "the VA interpreted and applied Section 5502 to allow [her] collection of a 5% commission as authorized by the probate court—so long as her guardian commission was collected *in lieu of*, and not in addition to, any fees authorized by the Secretary under 5502(a)(2)."

Whether or not this was a correct interpretation of the statute, it is undisputed that the Secretary authorized Gainey's five percent commission. So to resolve Plaintiffs' contention that federal law prohibits that commission, the district court would have to review whether a decision of the Secretary that affected Andrews's benefits violated federal law. The VJRA prevents district courts from doing that. 38 U.S.C. § 511(a). Therefore, the district court was without jurisdiction to decide the claims against Gainey.

Finally, as to Governor Kemp, Plaintiffs bring a federal preemption claim against the State of Georgia. Plaintiffs assert that O.C.G.A. § 29-7-15, the Georgia law permitting VA guardians to earn commissions of five percent, is preempted by federal law. Plaintiffs also allege that the State of Georgia violated their due process rights and the Commerce Clause. Although "cloaked in constitutional terms," *Sugrue*, 26 F.3d at 11, these claims are, in reality, yet another attempt to challenge the Secretary's determination by pointing to "questions of law . . . necessary to [his] decision . . . under a law that affects benefits." 38 U.S.C. § 511(a). Therefore, the VJRA's exclusive review mechanism applies, and the district court lacked jurisdiction to decide these claims.

None of the cases cited by Plaintiffs are persuasive. Plaintiffs rely primarily on *Mansfield v. Peake*, 525 F.3d 1312 (Fed. Cir. 2008). There, the Federal Circuit affirmed the Veterans Court of Appeals' decision that providing the VA with

notice of intent to file a medical malpractice claim did not constitute an informal claim for disability benefits. *Id*. at 1316. *Mansfield* did not address the question presented here: whether challenges that are framed as constitutional and tort law claims—but are really challenges to the Secretary's benefits decision—fall within the scope of the VJRA.

Plaintiffs also rely on *Traynor v. Turnage*, 485 U.S. 535 (1988). But Plaintiffs' characterization of that case lacks important context. In *Traynor*, the Court narrowly construed the scope of 38 U.S.C. § 211(a), the precursor to § 511(a), holding that it did not preclude the district court from deciding whether a VA regulation violated the Rehabilitation Act. *Id.* at 545. The Court reasoned that the VA lacked "any special expertise" in deciding the issue. *Id.* at 544. And, therefore, "[p]ermitting [such] cases to go forward [would] not undermine the purposes of § 211(a)" by "enmesh[ing] the courts in the technical and complex determinations and applications of Veterans' Administration policy connected with veterans' benefits decisions." *Id.* (internal quotation marks omitted). The Court added the caveat that "if experience proves otherwise, the Veterans' Administration is fully capable of seeking appropriate relief from Congress." *Id.* at 544–45.

Congress reacted within a matter of months. "In order to dissuade the judiciary from ignoring the explicit language that Congress used in isolating

decisions of the Administrator from judicial scrutiny, Congress overhauled both the internal review mechanism and § 211 in the VJRA." *Veterans for Common Sense v. Shinseki*, 678 F.3d 1013, 1021 (9th Cir. 2012) (en banc) (internal citations omitted). To this end, Congress created the United States Court of Appeals for Veterans Claims and made that court's decisions appealable only to the Federal Circuit. *Id.* Congress also "expanded the provision precluding judicial review" through its enactment of 38 U.S.C. § 511—the provision critical to our disposition of this appeal. *Id.* at 1022. Because *Traynor* was not decided under the current VJRA framework, we find Plaintiffs' reliance on that decision unpersuasive.

Under the current VJRA framework, each of Plaintiffs' claims amounts to a challenge to "questions of law and fact necessary to a decision . . . under a law that affects the provision of benefits . . . to veterans." 38 U.S.C. § 511(a). Because "the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed" outside of the framework the VJRA sets forth, the district court lacked jurisdiction to decide Plaintiffs' claims. *Id.*

**AFFIRMED.**