United States Court of Appeals,

Eleventh Circuit.

No. 95-5025

Non-Argument Calendar.

Michael W. TRAMEL, James Caudill, Petitioners,

v.

UNITED STATES PAROLE COMMISSION, Respondent.

Nov. 27, 1996.

Petition for Review of an Order of the United States Parole Commission.

Before EDMONDSON, COX and CARNES, Circuit Judges.

PER CURIAM:

Petitioners Michael Tramel and James Caudill appeal sentencing determinations issued by the United States Parole Commission pursuant to hearings held at the Metropolitan Correctional Center in Miami, Florida, where the petitioners are held.

Petitioners are citizens of the United States. Following their arrest near Cat Cay, Bimini, on a boat carrying bales of marijuana, they were convicted in the Commonwealth of the Bahamas of possession of a dangerous drug with intent to supply. Each was sentenced to four years imprisonment. Pursuant to the Convention on the Transfer of Sentenced Persons, Council of Europe, they subsequently were transferred to the United States to serve their foreign sentences. Under 18 U.S.C. § 4106A(b)(1)(A), the United States Parole Commission ("Commission") had jurisdiction to determine a release date and a period of supervised release for each prisoner. Specifically, the Commission, as required under subsection (b)(1)(A), considered each prisoner as though he was

"convicted in a United States district court of a similar offense." 18 U.S.C. § 4106A(b)(1)(A). In July 1995, the Commission determined that each petitioner should serve the full term of his 48-month foreign sentence and a six-month term of supervised release.

The Commission examiner found that Tramel's base offense level was 30. The examiner entered a two-level increase under U.S.S.G. § 2D1.1(b)(1) because Tramel's offense involved a firearm, and a three-level decrease under U.S.S.G. § 3E1.1(b) because he accepted responsibility. This placed Tramel's total offense level at 29. Because Tramel had a Criminal History Category of I, his sentencing guideline range was 87-108 months.

The examiner also found that Caudill's base offense level was 30. The examiner entered a three-level decrease under U.S.S.G. § 3E1.1(b) for acceptance of responsibility, placing Caudill's total offense level at 27. With a Criminal History Category of II, Caudill's sentencing guideline range was 78-97 months.

The examiner determined that both petitioners had endured extremely harsh prison conditions in the Bahamas, and beatings by guards that amounted to torture. Consequently, the examiner concluded that a downward departure from the applicable guideline range was appropriate. But the examiner rejected petitioners' arguments that, in each case, the foreign sentence of 48 months should be considered the guideline sentence from which the downward departure was to be calculated. Concluding that the foreign sentences themselves were more than sufficient departure for the torture claims, the examiner declined to fix release dates prior to

expiration of the full terms of those sentences.

*Contentions of the Parties*

Petitioners argue that the hearing examiner and the Commission erred in using the "preliminary" guideline sentence as the baseline from which a downward departure was to be calculated. Because 48 months was the maximum sentence authorized by statute, petitioners argue, 48 months became the guideline sentence under § 5G1.1(a). In addition, petitioners contend that the hearing examiner and the Commission should not have relied upon parole guidelines or "policies" to determine the application of a departure.

The Commission responds by arguing that it committed no error in using the applicable sentencing guideline range as the basis for determining whether petitioners' Bahamian prison experience warranted a downward departure great enough to justify a release date earlier than 48 months. The Commission also contends that the record in the case does not support petitioners' assertion that the hearing examiner resorted to parole or other impermissible agency guidelines in arriving at his recommended decisions.

*Discussion*

The question of whether the Parole Commission committed an error of law by using the applicable sentencing guideline range as the baseline for a downward departure is a question of law to be reviewed *de novo. Molano-Garza v. United States Parole Commission,* 965 F.2d 20, 23 (5th Cir.1992), *cert. denied,* 506 U.S. 1065, 113 S.Ct. 1009, 122 L.Ed.2d 158 (1993).

When the applicable sentencing guideline range exceeds the full term of the sentence imposed by a foreign court, a transfer

treaty prisoner's foreign sentence should be treated by the Parole Commission as analogous to a § 5G1.1(a) "guideline sentence."[1] *See Thorpe v. United States Parole Commission,* 902 F.2d 291 (5th Cir.1990). In such cases, the Commission may determine that the appropriate release date under 18 U.S.C. § 4106A is upon expiration of the full term of the foreign sentence. *Thorpe* upheld the Commission's refusal to establish a release date prior to expiration of the full term of the foreign sentence, despite "the abuse [Mr. Thorpe] suffered at the hands of the foreign officials." 902 F.2d at 292. The Commission relied on the fact that the Mexican court imposed an 84-month sentence and, "if Thorpe had been convicted in a United States court, he would be subject to an imprisonment range under the Guidelines of 151 to 188 months." *Id.* We find the reasoning of *Thorpe* to be convincing and we affirm the U.S. Parole Commission's sentencing determinations in this case.

When the Commission makes transfer treaty decisions, it is required by § 4106A(b)(1)(B)(I) to consider any recommendation of the U.S. Probation Office, including any recommendation about the applicable guideline range. The Commission must also consider, pursuant to U.S.S.G. § 5K2.0 and 18 U.S.C. § 3553(b), whether a ground exists for a downward departure "outside the range

---

[1]Section 5G1.1(a) states: "Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence." The commentary to § 5G1.1(a) clarifies this statement: "For example, if the applicable guideline range is 51-63 months and the maximum sentence authorized by statute for the offense of conviction is 48 months, the sentence required by the guidelines under subsection (a) is 48 months; a sentence of less than 48 months would be a guideline departure."

established by the applicable guideline."[2]  A commonly asserted ground for departure in the case of transfer treaty prisoners is that the prisoner suffered physical abuse and/or torture while incarcerated in a foreign prison.  The Commission agrees that such abuse or torture can be an appropriate basis for a downward departure.

In cases where the foreign sentence is below the applicable guideline range, the Commission has ordered a downward departure substantial enough to justify a release date prior to expiration of the full term of the foreign sentence. *See Trevino-Casares v. U.S. Parole Commission,* 992 F.2d 1068 (10th Cir.1993) (ordering a release date at 71 months on a 108-month Mexican sentence after determining that the appropriate guideline range was 121-151 months).  However, the Commission is not required to disregard the applicable guideline range when determining whether a downward departure should be ordered.  In *Trevino-Casares,* the Commission decided that a departure was appropriate because the prisoner suffered "serious and severe physical abuse while in foreign custody resulting in permanent physical damage."  992 F.2d at 1071. In *Thorpe,* by contrast, the Commission concluded that an earlier release date was not appropriate.  The Commission's decisions in the present cases fall into the same category as those in *Thorpe.*

---

[2]Section 5K2.0, "Grounds for Departure (Policy Statement)," states, in part:  "Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' "

Although the examiner found that Tramel and Caudill were mistreated, their incarceration in the Bahamas was relatively brief and their circumstances were not as severe as those described in *Trevino-Casares.* In the end, a foreign sentence does not under § 5G1.1(a) displace the applicable guideline range; it is the sentence required by the guidelines, but not a substitute for the guideline range itself. *See* Commentary to § 5G1.1(a); *United States v. Lattimore,* 974 F.2d 971, 973 (8th Cir.1992) (rejecting the contention that an otherwise applicable guideline range of 78–97 months becomes a guideline range of 60-97 months when the mandatory minimum for conviction of the offense is 60 months).

The record plainly indicates that the hearing examiner understood his authority to depart downward from the full term of petitioners' foreign sentences, but decided against such a departure after giving due regard to the applicable guideline range as the measure of the seriousness of petitioners' crimes. A decision not to depart downward is not reviewable on appeal. 18 U.S.C. § 3742(a).

Finally, we reject petitioners' contention that the examiner improperly relied on parole guidelines. The records in petitioners' cases show that the examiner received guidance from the Commission as to the appropriate base point from which to subtract any downward departure the examiner found warranted. This guidance had been given to the examiner prior to the hearings, and included an unpublished decision of the Fifth Circuit Court of Appeals, *Roeder v. U.S. Parole Commission,* 5 F.3d 529, No. 93-4114 (1993). Nothing in the record indicates that the examiner

considered other guidelines to determine the appropriate departure. The examiner explained that his finding was based upon "many of our other awards that [we] have been giving over the years." (Tramel, R.1-K at 68-69.) The examiner cannot be faulted for being aware of the Commission's past practice in similar transfer treaty cases, and for considering that practice as unwritten guidance in his effort to achieve an equitable result. There is no reference in the record to the use or role of any "parole guidelines."

AFFIRMED.