In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3830

Iljas Cafi,

Petitioner,

v.

United States Parole Commission,

Respondent.

Appeal from the United States Parole Commission

Argued May 9, 2001--Decided September 28, 2001

  Before Ripple, Manion, and Kanne, Circuit
Judges.

  Manion, Circuit Judge.  Iljas Cafi was
convicted in Mexico of possession of
cocaine with intent to transport, and he
was sentenced to ten years' imprisonment
in Mexico City. About one year later
Cafi, who is an American citizen, was
transferred to the United States (and a
federal prison) pursuant to the Treaty on
Execution of Penal Sentences, Nov. 25,
1976, U.S.-Mexico, 28 U.S.T. 7399
("Prisoner Transfer Treaty" or "Treaty").
After his transfer, the Parole Commission
held a hearing to determine Cafi's
release date. Cafi appealed the
Commission's initial determination, but
the Fifth Circuit remanded the case based
on the Commission's request. More
hearings took place, at the conclusion of
which the Commission set a release date
following 108 months in prison and a term
of 36 months of supervised release, or
until the full term of Cafi's foreign
sentence expired, whichever came first.
Cafi appeals the Commission's
determination, arguing that the
Commission erred in setting his release
date and term of supervised release. We
affirm.

I.

  On April 9, 1997, Mexican police
arrested Iljas Cafi at the International
Airport in Mexico City, Mexico, after
discovering 17 one-kilogram packets of

cocaine hidden in a black bag later determined to be owned by Cafi./1 That same day, Mexican police arrested Claudio Codognotto who also possessed a black bag containing approximately 17 kilograms of cocaine. Codognotto told the Mexican authorities that he and Cafi had met with another man named "Brin" or "Brian" who had provided them with the cocaine. While it is unclear from the record what happened to Codognotto, a Mexican court convicted Cafi of possession of cocaine with intent to transport and he was sentenced to ten years' imprisonment in Mexico City.

Fortunately for Cafi he is a United States citizen,/2 and thus under the Prisoner Transfer Treaty could be transferred to a United States prison. Cafi's transfer was accomplished on June 22, 1998. Following his transfer to the United States, the Parole Commission initiated proceedings pursuant to 18 U.S.C. sec. 4106A(b)(1)(A). Section 4106A(b) (1)(A) requires the Commission to "determine a release date and a period and conditions of supervised release for an offender transferred to the United States to serve a sentence of imprisonment, as though the offender were convicted in a United States district court of a similar offense." Basically, this requires the Commission to determine what Cafi's sentence would have been under United States law and the Sentencing Guidelines, and then to set a release date based on its determination. However, in setting a release date and term of supervised release, the Commission is constrained by Section 4106A(b)(1)(C), which provides that "[t]he combined periods of imprisonment and supervised release that result from such determination shall not exceed the term of imprisonment imposed by the foreign court on that offender." 18 U.S.C. sec. 4106A(b)(1)(C).

The process began with the United States Probation Office, which reviewed the records surrounding Cafi's conviction in Mexico and then prepared a "Postsentence Investigation Report" ("PIR"). The PIR recommended that Cafi be assigned an offense level of 31 with a Guidelines range of 108 to 135 months in prison. Cafi's attorney objected to the PIR, arguing that Cafi was entitled to a two-level downward adjustment for acceptance of responsibility and a two-level

downward adjustment for his minor role in the offense.

Because Cafi objected to the PIR, the Commission held a hearing to address his objections. At the conclusion of the hearing, the hearing examiner recommended that Cafi receive downward departures for both acceptance of responsibility and for his minor role in the offense. Based on these reductions, the examiner recommended a sentencing range of 97-121 months and suggested that Cafi's release date be set at the lower end, and then be further reduced by ten months because of the abuse Cafi had suffered while in the Mexican prison. Thus, the examiner recommended a release date for Cafi following 87 months' imprisonment.

The examiner's recommendation was forwarded to the Parole Commission's legal office for review. The legal office concurred in the examiner's recommendation, except that it recommended that Cafi not receive a two-level adjustment for a minor role in the offense because the amount of cocaine was very large and did not take into account the cocaine transported by Codognotto. The legal office then recommended a release date following 111 months' imprisonment.

At no time was Cafi informed of, or given an opportunity to respond to, the legal office's recommendation. Rather, Cafi's case was forwarded to the Commission where it was reviewed by two Commissioners. The Commissioners apparently decided to follow the legal office's recommendation because the Commission set a release date for Cafi following 111 months' imprisonment, to be followed by a term of supervised release of the earlier of 36 months or until the expiration of Cafi's ten-year Mexican sentence./3

We say "apparently" because the Commission did not issue any explanation for its calculation, nor did the official "Worksheet for Transfer Treaty Determination" address the "minor role" issue. However, the legal office later issued an Addendum to the Worksheet which described the rationale behind the Commission's decision, stating that the Commission had decided against the minor-role adjustment because Cafi "had

possessed a very large amount of cocaine (17 kilograms) and . . . had direct contact with the identified organizer of the crime in which only three personsparticipated."

Cafi appealed the Commission's determination of his release date to the Fifth Circuit./4 After Cafi filed his appeal, on July 19, 1999, the legal office sent a memorandum to the Commissioners about Cafi's appeal, stating that it was persuaded that Cafi and his attorney should have had some sort of opportunity to be heard on whether Cafi was entitled to a "minor participant" reduction because of "the particular context of this case," namely the conflict between the original examiner's recommendation and the legal office's recommendation, the latter of which the Commission adopted. The legal office recommended that the Commission seek remand of Cafi's case from the Fifth Circuit. In response, the next day the Commission voted to vacate its original determination and remand Cafi's case for rehearing to address the minor-participant issue. The Commission then filed a motion to remand with the Fifth Circuit, noting that Cafi's counsel had no objection to the remand. The Fifth Circuit remanded, putting Cafi's case back before the Commission.

Following remand from the Fifth Circuit, Cafi was transferred to a federal correctional institution in Greenville, Illinois. After his transfer, the Commission held a new hearing concerning Cafi's release date, focusing solely on Cafi's request for a minor-participant reduction. A new examiner presided over the hearing and heard testimony from Cafi as to his role in the offense, and argument by Cafi's attorney as to why Cafi deserved a reduction for being a minor participant. At the conclusion of the hearing, the examiner recommended that Cafi not get that reduction, explaining that because Cafi was not from the Mexico City area, "there would have had to have been some prior meetings between [Cafi] and this organizer, leader, this Mr. Brin, prior to the actual date in April of 1997 when all this transpired." The examiner continued, "So despite the fact that I do find that that there was someone who was probably manager or leader . . . . I don't find that

you played a minor role in this offense.
. . ."

The Commission's legal office once again reviewed the examiner's recommendation. The legal office recommended that the examiner's recommendation be adopted and that Cafi not receive a minor-participant reduction. The Commission followed the examiner and the legal office's recommendations, setting a 108-month period of incarceration and a release date of April 18, 2006./5 The Commission further required that "immediately upon release from imprisonment, [Cafi] commence serving a 36-month period of supervised release, or until the full term date of your foreign sentence . . . whichever is earlier . . . ." Because Cafi's ten-year foreign sentence will end on April 18, 2007, practically that meant that Cafi would serve only 12 months on supervised release.

II.

Cafi appeals the Commission's determination of his release date. Initially, Cafi argues that the Commission erred in determining that he should serve 108 months in prison with, in effect, only 12 months of supervised release, because sec. 5D1.2(a)(2) of the Sentencing Guidelines requires that he serve a minimum of 24 months on supervised release./6 Cafi contends that because sec. 5D1.2(a)(2) mandates a term of at least 24 months of supervised release, the Commission should have set that term first, and then determined his term of imprisonment. And because Section 4106A(C) provides that Cafi's combined period of imprisonment and supervised release cannot exceed his foreign sentence--which was ten years--Cafi maintains that the Commission should have set his prison term at 96 months.

Initially, we note that Cafi maintains that his minimum supervised release term is two years under Section 5D.1.2(a)(2) because he was convicted of the equivalent of a Class C felony. However, in setting Cafi's release date the Commission determined that the most similar United States offense "would be the Class A felony offense of possession with intent to distribute a quantity of cocaine, a violation of 21 U.S.C. sec.

841(a)(1) and (b)(1)(A)." Thus, according to the Commission, the minimum term of supervised release for Cafi under U.S.S.G. sec. 5D1.2(a) is three years. Whether the appropriate guideline minimum is two or three years, however, is irrelevant as far as the Commission is concerned, because according to the Commission, the mandatory minimums for supervised release set forth in the United States Code and the Sentencing Guidelines do not apply to its Section 4106A determination of a transferee's release date and terms and conditions of supervised release./7 In support of its position, the Commission cites 28 C.F.R. sec. 2.68(a)(7):

It is the Commission's interpretation of 18 U.S.C. 4106A that the U.S. Code provisions for mandatory minimum terms of imprisonment and supervised release, as well as Sentencing Guideline provisions implementing such U.S. Code requirements (e.g., Section 5G1.1(b) of the Sentencing Guidelines), . . . were not intended by Congress to be applicable in an 18 U.S.C. 4106A(b)(1)(A) determination.

28 C.F.R. sec. 2.68(a)(7).

The Commission asserts that we should defer to this regulation, citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). See Asare v. United States Parole Commission, 2 F.3d 540, 543 (4th Cir. 1993) ("When statutes charge agencies with the responsibility of administering a statutory scheme, the agencies' reasonable interpretations of the statute that they are applying are entitled to deference."); Trevino-Casares v. United States Parole Commission, 992 F.2d 1068, 1072 (10th Cir. 1993) ("[T]he Commission administers, in part, the statutory scheme under review and, therefore, the principles of deferential review summarized in Chevron . . . are implicated here.")/8 Under Chevron, courts must engage in a two-prong analysis. First, we must determine whether a statute is silent or ambiguous on the issue. City of Chicago v. Federal Communications Commission, 199 F.3d 424, 428 (7th Cir. 1999). "If the statute is silent or ambiguous, then under Chevron, we decide whether the agency's determination is based on a permissible construction of the statute." Id.

As to the first question, Congress has not explicitly stated whether or not the minimum terms of imprisonment and supervised release set forth in the United States Code and Sentencing Guidelines apply to transferees. Nonetheless, Cafi argues that because Section 4106A provides that the Commission shall determine a release date and period of supervised release "as though the offender were convicted in a United States district court," Congress was requiring the Commission to apply the Sentencing Guideline provisions, including the mandatory minimum periods of supervised release set forth in U.S.S.G. sec. 5D1.2(a).

To support this argument, Cafi cites Trevino-Casares, 992 F.2d 1068, wherein the Tenth Circuit stated that Section 4106A(b)(1)(a) "puts the Parole Commission, with regard to a [transferred prisoner] . . . in the position of a United States district court relative to a convicted defendant. Thus, the Parole Commission must use the sentencing guidelines and make the findings necessary to determine the applicable guideline range." Id. at 1069 n.3 (internal quotation omitted). The Tenth Circuit further noted that the Commission's function under Section 4106A is "in procedure, substance, and effect tantamount to the imposition of a federal sentence, and it should, for all practical purposes be treated as such. . . ." Id. at 1069. Based on this language, Cafi argues that in determining his release date "as though he were sentenced by a district court," the Commission must apply the minimum period of supervised release as set forth in U.S.S.G. sec. 5D1.2(a)(2).

However, in Trevino-Casares the Tenth Circuit merely held that a transferee qualified for good time credits after the Commission had set a release date and a period of supervised release, even though the prisoner's sentence and release date were determined pursuant to Section 4106A(b)(1). 992 F.2d at 1071. The Tenth Circuit in Trevino-Casares did not consider whether Congress intended the mandatory minimum for supervised release to apply to a Section 4106A(b)(1) determination.

The Fifth Circuit, however, did consider

this precise issue in Molano-Garza v. United States Parole Commission, 965 F.2d 20 (5th Cir. 1992). In Molano-Garza, the Fifth Circuit held that the Commission did "not have to impose the three-year statutory minimum period of supervised release." The court reasoned that mandatory minimums were inapplicable because the Commission "is authorized to determine a release date, not to sentence the transferred prisoner." Id. at 25.

Molano-Garza thus demonstrates a second way of reading Section 4106A. Under Molano-Garza's reading of the statute, because the Commission is not actually sentencing a transferee but is merely determining a release date "as though the defendant were sentenced in a district court," the Commission should attempt to apply the statutory and guideline provisions, but it is not bound by the mandatory minimums set forth in the statutes or Guidelines.

Of course, that does not mean that Cafi's reading of the statutory and guideline provisions is implausible--it merely means that Congress has created an ambiguity. As noted above, "[i]f the statute is silent or ambiguous, then under Chevron, we decide whether the agency's determination is based on a permissible construction of the statute." City of Chicago, 199 F.3d at 428. In doing so, "[w]e may not substitute our own construction of a statute when the agency has interpreted it in a reasonable fashion. In other words, so long as the agency has set out a reasonable interpretation, it does not matter whether, in the first instance, we would have come to the same conclusion." Id.

While the statutes could possibly be read differently, we conclude that the Commission's reading of Section 4106A and the Guidelines is a permissible construction. First, Section 4106A provides that the Commission is to deter mine a release date and terms and conditions of supervised release "as though the defendant were sentenced in a district court;" it does not provide that a defendant is actually sentenced under the federal statutory and guideline provisions. Molano-Garza, 965 F.2d at 25. Second, the Commission's view that it is not bound by the statutory and guideline mandatory minimums when making a Section

4106A determination is eminently reasonable when considered in light of those provisions. For instance, if the Commission were bound by the statutory and guideline mandatory minimums, under 21 U.S.C. sec. 841(a)(1) and (b)(1)(A), Cafi would be required to serve a mandatory minimum term of imprisonment of ten years and a mandatory minimum term of supervised release of five years. But to comply with the mandatory minimums set forth in Section 841(a)(1) would require the Commission to violate Section 4106A, because under the latter provision, Cafi's combined term of imprisonment and supervised release cannot exceed his foreign ten-year sentence. That means that either the mandatory minimum prison term or the mandatory minimum supervised release term must give way. It is perfectly reasonable for the Commission to have decided that it is more important for a transferee to serve a prison sentence first and then, if time remains on his outstanding foreign sentence, require that time to be served on supervised release. This would best serve the congressional goal of seeking equal treatment of similarly situated Treaty and non-Treaty prisoners with respect to the term of incarceration. See Cannon v. United States Parole Commission, 973 F.2d 1190, 1196 (5th Cir. 1992) (citing H.R.Rep. 95-720, 95th Cong., 1st Sess. 1977, reprinted in 1977 U.S.C.C.A.N. 3159). Because the Commission's reading of Section 4106A is permissible,/9 we conclude that it did not err in setting Cafi's term of imprisonment of 108 months first, and then providing that he would serve 36 months of supervised release or "until the full term date of [his] foreign sentence" were served./10

Cafi next argues that the Commission erred in refusing to give him a reduction for being a minor participant. Initially, Cafi contends that the Commission erred by failing to explain why it was denying him a minor-participant reduction. It is true that in setting Cafi's release date and term of supervised release, the Commission did not mention any of the offense level adjustments, including the three-level adjustment Cafi received for acceptance of responsibility, and the two-level minor-participant adjustment that Cafi did not receive.

Cafi argues on appeal that the

Commission was required to explain why it denied his request for a minor-participant reduction. In support of his position, Cafi cites 28 C.F.R. sec. 2.68(i)(4)(iii): "Commission's final decision shall be supported by a statement of reasons explaining: (iii) The reason for making a release determination above or below the guideline range. If the release date is within a guideline range that exceeds 24 months, the Commission shall identify the reason for the release date selected." 28 C.F.R. sec. 2.68(i)(4)(iii).

Cafi's reliance on Section 2.68(i)(4)(iii) is misplaced. That regulation does not require the Commission to explain its reasons for an offense-level adjustment; rather, the regulation requires an explanation for departing from the guideline range. In fact, the Commission in this case did depart from the 121-151 month guideline range (setting a release date following 108 months of imprisonment) and in doing so, it complied with Section 2.68(i)(4)(iii) by explaining its reasons for this departure, namely the abuse Cafi suffered in a Mexican prison. But contrary to Cafi's position, this regulation does not require the Commission to explain offense-level adjustments--only departures from the guideline range. In fact, the regulation's requirement that the Commission provide a statement of reasons for guideline departures indicates that in other circumstances the Commission need not state its reasoning. Nor does the "shall identify the reason for the release date selected" language of Section 2.68(i)(4)(iii) apply to the Commission's decision of offense-level adjustments; rather, that clause merely requires the Commission to explain why it selected the release date within the guideline range that it did.

Cafi also does not cite to any other statutory or regulatory provision which would require the Commission to set forth its factual findings or the reasoning supporting its offense-level determinations. He has also not pointed to any case law supporting his position. Nor have we found anything on point. Rather, most of the cases reviewing Section 4106A(b)(1) determinations speak of the hearing examiners' findings of

fact and then review the Commission's determination in light of those findings. See, e.g., Zecevic v. United States Parole Commission, 163 F.3d 731, 733 (2d Cir. 1998); James v. United States Parole Commission, 159 F.3d 1200, 1203 (9th Cir. 1998); Kleeman v. United States Parole Commission, 125 F.3d 725, 729-30, 732 (9th Cir. 1997); Tramel v. United States Parole Commission, 100 F.3d 129, 131 (11th Cir. 1996); Navarrete v. United States Parole Commission, 34 F.3d 316, 319 n.2 (5th Cir. 1994); Ajala v. United States Parole Commission, 997 F.2d 651, 653 (9th Cir. 1993); Molano-Garza v. United States Parole Commission, 965 F.2d 20, 22 (5th Cir. 1992); Hansen v. United States Parole Commission, 904 F.2d 306, 310 (5th Cir. 1990). In other words, the courts seem to assume that when the Commission adopts the examiner's release-date recommendations, it is also impliedly adopting the factual findings and rationale underlying those recommendations. See, e.g., Hansen, 904 F.2d at 310 ("the Parole Commission apparently adopted the recommendation of the panel examiners . . . ."); James, 159 F.3d at 1204 (holding that Commission did not clearly err in finding that the transferee did not qualify for an acceptance of responsibility reduction, but citing to the legal office's reasoning); Kleeman, 125 F.3d at 730-32 (stating that the "Commission found," while summarizing the legal office's findings and recommendations); Zecevic, 163 F.3d 736-37 (upholding Commission's denial of downward departure based on the record, including the hearing transcript and the Postsentence Investigation Report); Ajala, 997 F.2d at 656 (upholding Commission's release date determination and its refusal to granted a minor-participant reduction based on examiner's credibility determination). This approach seems appropriate where, as here, the Commission sets forth an offense level, criminal history category, and guideline range identical to those proposed by the examiner. Of course, it would be prudent--and easy--for the Commission to add an express statement that it is adopting the Postsentence Investigation Report, or the examiner's recommendation, or the legal office's recommendation, whichever the case may be. But because in this case the Commission adopted the examiner and the legal office's recommendations that Cafi

not receive a minor-participant reduction, it seems clear that it impliedly adopted theirreasoning as well./11

   The question remains as to whether the Commission erred in denying Cafi a minor-participant reduction. A minor-participant reduction may be for either four or two levels: A four-level reduction is appropriate "[i]f the defendant was a minimal participant in any criminal activity," and a two-level reduction is appropriate "[i]f the defendant was a minor participant in any criminal activity." A "minimal participant" is one who is "plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. sec. 3B1.2(a), Application Note 1. A "minor participant" is one who "is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. sec. 3B1.2(a), Application Note 3.

   Cafi argues that he was entitled to a minor-participant reduction because the record established that another individual, Brian, organized the operation, employed both Cafi and Codognotto, provided the cocaine, and provided the luggage in which to carry it. That all may be true, but Cafi was not convicted of conspiracy, nor was he sentenced based on the larger criminal activity at play, namely the additional cocaine transported by Codognotto. Rather, he was convicted in Mexico of possession of cocaine with intent to transport and the Commission determined his release date based solely on the cocaine he himself possessed. This court has explained that where a defendant "was sentenced only for drugs that he himself handled, . . . it makes no sense to claim that one is a minor participant in one's own conduct." United States v. Lampkins, 47 F.3d 175, 180 (7th Cir. 1995). Because Cafi's release date was based solely on the drugs he possessed, the Commission did not clearly err in denying Cafi's request for a reduction for being a minor participant. See Lampkins, 47 F.3d at 180. See also, United States v. Almanza, 225 F.3d 845, 846-47 (7th Cir. 2000).

III.

   Pursuant to its authority under Section

4106A, the Commission set Cafi's release date following 108 months in prison, and provided for 36 months of supervised release or until the full term date of Cafi's foreign sentence, whichever came earlier. Because Cafi's foreign sentence was for ten years, that meant his supervised release would terminate before 36 months. While the Sentencing Guidelines provide a minimum of 36 months of supervised release, we conclude that mandatory minimums do not apply to Section 4106A determinations. Accordingly, the Commission did not err in setting Cafi's release date or the terms and conditions of supervised release. The Commission also did not err in failing to state its reasons for denying Cafi a minor-participant reduction. And given that Cafi was sentenced only for his own conduct, such a reduction was not appropriate. For these and the foregoing reasons, we AFFIRM.

FOOTNOTES

/1 While Cafi originally claimed that the bag and the drugs were not his, he later admitted to his criminal activities.

/2 We say this because the evidence indicates that during his imprisonment in Mexico he was severely beaten by prison guards and denied medical treatment, leaving him near death on two occasions.

/3 While this phraseology may seem strange, the Commission included the "or until the expiration of" language to assure that Cafi's combined term of imprisonment and supervised release did not exceed his 10-year Mexican sentence. See 18 U.S.C. sec. 4106A(b)(1)(C).

/4 Section 4106A(b)(2)(A) provides that "a determination by the United States Parole Commission . . . may be appealed to the United States court of appeals for the circuit in which the offender is imprisoned at the time of the determination of such Commission."

/5 Originally, the Commission set a release date following a term of 111 months' imprisonment, but on remand it set a release date following 108 months' imprisonment. It appears from the record that on remand the Commission decided to increase the downward departure it awarded Cafi for the abuse he suffered while in the Mexico City prison.

/6 United States Sentencing Guideline sec. 5D1.2(a)

provides:

Subject to subsection (b), if a term of supervised release is ordered, the length of the term shall be: (1) at least three years but not more than five years for a defendant convicted of a Class A or B felony; (2) at least two years but not more than three years for a defendant convicted of a Class C or D felony; (3) one year for a defendant convicted of a Class E felony or a Class A misdemeanor.

/7 Even if Cafi's offense should have been equated with a Class C felony, the Commission could still order a term of three years of supervised release. See U.S.S.G. sec. 5D1.2(a) providing that a defendant convicted of a Class C or D felony shall have a supervised release term of "at least two years but not more than three years . . . ."

/8 In Cannon v. United States Parole Commission, 973 F.2d 1190, 1194-95 (5th Cir. 1992), the Fifth Circuit noted that the Commission had informed it of a recently adopted interpretive regulation which would add the following language to 28 C.F.R. sec. 2.62(a)(1): "U.S. Code provisions requiring mandatory minimum terms or minimum periods of supervised release shall not apply to prisoners transferred pursuant to treaty who are serving terms of imprisonment imposed by foreign courts for violating foreign law." The Fifth Circuit concluded that Section 2.62(a)(1) was not promulgated in accordance with the law, and hence was owed no deference. Id. Cafi does not claim that the Commission failed to properly promulgate 28 C.F.R. sec. 2.68(a)(7), which differs in language from Section 2.62(a)(1). Accordingly, we will review the Commission's position with deference.

/9 In fact, for the same reasons, we believe that the Commission's reading of Section 4106A is the better view. Therefore, even if we decided that no deference were owed the Commission's view as stated in 28 C.F.R. sec. 2.68(i)(4)(iii), we would nonetheless follow the Fifth Circuit in Molano-Garza and hold that the mandatory minimums are inapplicable to Section 4106A transferees.

/10 As noted above, the Commission set Cafi's release date for 108 months, or on April 18, 2006, leaving only 12 months of supervised release. Since then, Cafi has earned good time credits which result in his release on January 3, 2006. This means that Cafi can now serve approximately 15 months on supervised release without exceeding his ten-year foreign sentence (assuming, of course, that he has not earned or lost any good time credit).

/11 Cafi also argues that the Commission should have explained its reasons for denying him a minor-participant reduction because the Fifth Circuit had remanded the case for that purpose. However, contrary to his position, the Fifth Circuit did not remand Cafi's case for the purpose of requiring the Commission to state its reasoning. Rather, Cafi's case was remanded to the Commission at the Commission's request. The Commission requested remand because it believed that Cafi should have had the opportunity to respond to the legal office's recommendation that he not receive a minor-participant reduction. The Commission afforded him a new hearing and an opportunity to justify a minor-participant reduction, and the examiner explained its rationale for his recommendation against the reduction, thus serving the purpose of remand.