[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12717

_____

DOJ No. 31366-037

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 10, 2007
THOMAS K. KAHN
CLERK

SONNY ODILI,

Petitioner,

versus

UNITED STATES PAROLE COMMISSION,

Respondent.

_____

Direct Appeal of Transfer Treaty Determination by the United States
Parole Commission Pursuant to 18 U.S.C. § 4106A

_____

**(January 10, 2007)**

Before PRYOR and FAY, Circuit Judges, and STEELE,* District Judge.

_____

*Honorable William H. Steele, United States District Court for the Southern District of
Alabama, sitting by designation.

STEELE, District Judge:

Appellant, Sonny Odili, was transferred to the United States after serving more than two years of a 100-month term of imprisonment imposed by a Panamanian court. Pursuant to 18 U.S.C. § 4106A, the United States Parole Commission convened a transfer treaty hearing to set a release date and a period and conditions of supervised release for Odili to complete the service of his foreign sentence. Odili appeals from the Parole Commission's determination, pursuant to 18 U.S.C. § 4106A(b)(2). We affirm.

## I. BACKGROUND

Odili, a United States citizen, was arrested on June 30, 2002 in the Republic of Panama, after local police caught him and a co-defendant in the act of grinding cocaine in a blender for concealment in false-bottomed luggage. Some 7,028.24 grams of cocaine were seized from the scene. Odili promptly confessed to his involvement in secreting the drugs and cooperated with local authorities.

After pleading guilty to charges of aggravated possession of illegal drugs against the public health, Odili was sentenced to a term of 100 months' imprisonment by the Second Penal Court of the Judicial Circuit of the Republic of Panama on July 16, 2002. The sentencing court was not moved by Odili's

2

cooperation, inasmuch as he had been unable to provide substantial information to aid authorities in identifying and locating his contact person, a shadowy figure known only as Victor.

For the next 24 months, Odili was incarcerated in a Panamanian prison. There he endured truly horrific conditions. He was repeatedly beaten and tortured, resulting in the fracture of both his ankle and his knee. He was tear gassed. He was denied access to running water and forced to use a plastic bag as a toilet. Fortunately for Odili, efforts were initiated to repatriate him to this country. Pursuant to treaty agreement and in accordance with 18 U.S.C. §§ 4105 and 4106A, Odili was transferred to the United States to serve the remainder of his foreign sentence as of July 14, 2004.

Subsequent to his transfer, the United States Probation Office for the Southern District of Florida prepared a Treaty Transfer Post-Sentence Report (the "PSR") concerning Odili for the Parole Commission's use. Identifying 21 U.S.C. § 841(a)(1) as the most analogous federal offense to the Panamanian offense of conviction, the PSR computed a base offense level of 32, with a three-level downward adjustment for acceptance of responsibility. Based on a criminal history category of II, the PSR yielded a sentencing guidelines range of 97 to 121 months. Odili's counsel submitted written objections to the PSR in advance of the

transfer treaty hearing.

On February 1, 2005, the Parole Commission conducted a transfer treaty hearing for Odili. The hearing examiner received extensive testimony from Odili himself, and heard arguments from his appointed counsel. Odili's position was that the most analogous U.S. offense to the offense of conviction was simple possession, not possession with intent to distribute; that he was entitled to a mitigating role reduction; and that he should receive a downward departure because of his cooperation, his abuse in the Panamanian prison, and his good works in tutoring other inmates at the federal detention center where he was then incarcerated.

The hearing examiner made written recommendations adopting the PSR's calculations that Odili's total offense level was 29, that his criminal history category was II, and that the applicable guidelines range was 97-121 months. She also determined that a sentence below that range was appropriate based on Odili's torture in the foreign prison, the fact that the length of the foreign sentence limited the available time for post-incarceration supervision, and his tutoring of fellow inmates. On this basis, the hearing examiner recommended that Odili be released after a total period of imprisonment of 85 months, after which he would serve a 60-month period of supervised release. The Parole Commission entered a

4

Transfer Treaty Determination that essentially adopted these recommendations. In particular, the Parole Commission accepted the hearing examiner's guidelines calculations and set a release date after service of 85 months, to be followed by a period of supervised release running until the earlier of 60 months or the full-term date of Odili's foreign sentence. Odili timely appealed.

During the pendency of this appeal, Odili petitioned the Parole Commission for a new hearing on grounds, *inter alia*, that recently furnished documents from his Panamanian counsel showed that he was entitled to a mitigating role reduction and/or a further reduction for cooperation with Panamanian authorities. Upon consideration of Odili's motion, the Parole Commission entered a Modified Transfer Treaty Determination, setting a release date after service of 81 months based on his having furnished substantial assistance to foreign authorities in prosecuting his co-defendant. The original Transfer Treaty Determination was otherwise unchanged.

Odili appeals the Parole Commission's determination on the grounds that it improperly failed to give him a mitigating role adjustment, erroneously increased the applicable supervised release term, improperly made drug quantity findings, and applied the guidelines as mandatory. According to Odili, these errors resulted in imposition of an unreasonable term of imprisonment and of supervised release.

5

## II.  STANDARD OF REVIEW

When an offender incarcerated in another country is transferred to the United States to serve a sentence of imprisonment, the foreign sentence must be administered under United States law.  In that regard, the foreign sentence is translated into one comparable to that for a domestic offender convicted of a similar offense.  *Bishop v. Reno*, 210 F.3d 1295, 1302 n.11 (11th Cir. 2000).  This function rests with the Parole Commission, which is obliged to "determine a release date and a period and conditions of supervised release ..., as though the offender were convicted in a United States district court of a similar offense."  18 U.S.C. § 4106A(b)(1)(A).  The Parole Commission does not re-sentence the transferee, nor does it revisit questions of guilt or innocence.  Instead, it simply converts the foreign sentence into a determination of release date and a period and conditions of supervised release.  *Bishop*, 210 F.3d at 1303 n.11; *Navarrete v. U.S. Parole Comm'n*, 34 F.3d 316, 319 (5th Cir. 1994).

In making a transfer treaty determination, "the Parole Commission is in an analogous position to that of the district court relative to the convicted transferee."  *Bishop*, 210 F.3d at 1302 n.11; *see also Austin v. U.S. Parole Comm'n*, 448 F.3d 197, 199 (2nd Cir. 2006) ("In effect, § 4106A gives the Parole Commission the authority and the responsibility of a district court at sentencing ....").  This

6

function "is in procedure, substance, and effect tantamount to the imposition of a federal sentence, and it should, for all practical purposes, be treated as such." *Bennett v. U.S. Parole Comm'n*, 83 F.3d 324, 327 (10th Cir. 1996).

Appellate review of a Parole Commission transfer treaty determination is the functional equivalent of review of a district court's sentencing determination. *Kleeman v. U.S. Parole Comm'n*, 125 F.3d 725, 730 (9th Cir. 1997); *Hansen v. U.S. Parole Comm'n*, 904 F.2d 306, 309 (5th Cir. 1990). Indeed, the statute instructs appellate courts to decide such an appeal "as though the determination appealed had been a sentence imposed by a United States district court." 18 U.S.C. § 4106A(b)(2)(B). Questions as to whether the Parole Commission committed errors of law in computing the applicable sentencing guideline range are reviewed *de novo* if objection was made below. *Tramel v. U.S. Parole Comm'n*, 100 F.3d 129, 131 (11th Cir. 1996); *Rosier v. U.S. Parole Comm'n*, 109 F.3d 212, 214 (5th Cir. 1997). Factual findings are reviewed for clear error, and due deference is given to the Parole Commission's application of the sentencing guidelines to the facts. *Navarrete*, 34 F.3d at 318.

## III.  DISCUSSION

*A.     The Role Assessment Determination.*

7

Odili's first assignment of error is that, in computing the applicable guidelines range, the Parole Commission erroneously denied his request for a mitigating role adjustment. The sentencing guidelines provide that a defendant's offense level is adjusted downward if he is a minimal or minor participant in the criminal activity. U.S.S.G. § 3B1.2. We have "long and repeatedly held that a district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error." *United States v. Rodriguez de Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). This is because "[i]ntensely factual inquiries such as these are properly consigned to the experienced discretion of the district judge." *Id.* at 938. "The proponent of the downward adjustment - here the defendant - always bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." *Id.* at 939. Given that a transfer treaty hearing is the functional equivalent of a sentencing hearing, the "clear error" standard for review of a district court's role assessment determination applies with equal force to the review of such a determination made by the Parole Commission in the § 4106A context.[1]

---

[1]   Although this is a question of first impression in this Circuit, several of our sister circuits have so held. *See Cafi v. U.S. Parole Comm'n*, 268 F.3d 467, 475 (7th Cir. 2001) (finding that Parole Commission did not clearly err in denying request for minor participant reduction); *Rosier*, 109 F.3d at 214 (Parole Commission's determination of whether to apply § 3B1.2 adjustment is heavily dependent on facts of particular case); *Ajala v. U.S. Parole Comm'n*, 997 F.2d 651, 656 (9th Cir. 1993) (reviewing for clear error Parole Commission's denial of

8

Pursuant to *Rodriguez de Varon*, the Parole Commission's determination of Odili's role in the offense is informed by the following two guidelines principles: (1) whether Odili's role in the relevant conduct (*i.e.*, possession of more than 7 kilograms of cocaine) was minor, and (2) whether his conduct was minor as compared to that of the other participant (*i.e.*, his co-defendant in the house when the Panamanian police arrived) in his relevant conduct. 175 F.3d at 940.

In support of the requested adjustment, Odili offered his own testimony at the transfer treaty hearing. Odili testified that his Jamaica-based telecommunications business fell on hard times, prompting him to relocate to Panama in early June 2002 for the purpose of re-establishing that business in a new locale. Although Odili had established a physical space for this business, he was unable to commence work in Panama right away because of delays in approval and delivery of telephone lines. To fill the idle time, Odili frequented a bar where, during the second week of June, he encountered a Colombian man named Victor. After multiple meetings over a period of days or even weeks, Odili apprised Victor of his financial troubles, in response to which Victor offered him a "little job." Specifically, Victor promised to pay Odili $2,000 if he would help another man to grind cocaine and prepare a suitcase. Odili agreed. On June 30,

downward adjustment for role in offense under U.S.S.G. § 3B1.2).

9

2002, Victor and another man picked up Odili at his hotel in downtown Panama City and drove him to a house 90 minutes away. Victor instructed Odili to work with the other man, and departed immediately. Approximately 35 to 45 minutes later, police raided the house. Odili was caught red-handed, grinding cocaine for concealment in a false-bottomed suitcase in a house with more than seven kilograms of cocaine. Victor was apparently never apprehended.

According to Odili, he was simply a bit player in Victor's scheme. As he put it, "on arriving in Panama, I just run into the wrong friend." If Odili's story is accepted as true, he had recently arrived in Panama for legitimate business purposes when, by sheer happenstance, a virtual stranger plucked him off the street, deposited him at a cocaine-laden house to help process and package drugs, and then vanished into thin air, only for local police to storm the residence minutes later. But the Parole Commission was not required to accept this narrative. The hearing examiner repeatedly expressed reservations about the credibility of Odili's story. Odili himself recognized that his story might seem far-fetched, allowing at one point, "Now, ma'am, I know it's difficult to believe." Ultimately, the Parole Commission did not believe him. The hearing examiner stated that she did not find Odili's account credible because he was not a naïve and uneducated drug courier; because there was no corroboration for his story; and because it did not

make sense that one with Odili's skills and business acumen would undertake the risks of packaging drugs for just $2,000, particularly when he had other means of obtaining funds. Thus, the hearing examiner found it "more likely than not that Odili had more of an interest in this venture than a $2,000 fee to grind cocaine and put it in a suitcase."[2]

On appeal, Odili proffers no basis for concluding that the Parole Commission clearly erred in denying him a mitigating role adjustment. At most, he argues that his version of the facts depicts him as nothing more than a low-level helper. But he does not explain why we should overturn the Parole Commission's determination that his self-serving narrative was not credible. We have stressed that, "because the fact finder personally observes the testimony and is thus in a better position than a reviewing court to assess the credibility of witnesses," a trial court's credibility determination "is conclusive on the appellate court unless the judge credits *exceedingly* improbable testimony." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quoting *United States v. Eddy*, 8 F.3d 577,

---

[2] For purposes of this appeal, Odili has not distinguished between the recommendations of the hearing examiner and the determinations of the Parole Commission, but instead appears to have assumed that, upon adopting her recommendations, the Parole Commission also adopted the hearing examiner's reasoning and subsidiary findings. *See generally Cafi*, 268 F.3d at 476 (observing that many courts assume that Parole Commission's adoption of hearing examiner's recommendations implies adoption of their underlying factual findings and rationale, and making a similar assumption in context of denial of a minor-participant reduction). We need not explore the validity of that assumption.

11

580 (7th Cir. 1993)).

The hearing examiner's credibility finding, and our acceptance of same, precludes Odili from establishing that either of the *Rodriguez de Varon* guideposts favor a mitigating role adjustment in this case. Odili's sole evidence that he was a minimal or minor participant in the relevant conduct consisted of his own testimony. Because the hearing examiner did not believe Odili, and because Odili offers no viable grounds on appeal for disturbing that credibility determination, there is no evidence to support a conclusion that his role in the relevant conduct was minor or that his role, as compared to the other participant, was minor.

Accordingly, we find the Parole Commission did not clearly err in declining to credit Odili's testimony, and in finding that he was not entitled to a mitigating role adjustment.

*B.*     *The Supervised Release Determination.*

Next, Odili objects that the Parole Commission did not properly compute his supervised release term when it modified his release date downward. In particular, he submits that when the Parole Commission accelerated his release date, it impermissibly increased his supervised release term, inasmuch as nothing in the sentencing factors designated by 18 U.S.C. § 3553(a) would have supported any such increase.

By statute, the combined periods of imprisonment and supervised release resulting from a Parole Commission transfer treaty determination cannot exceed the original term of imprisonment imposed by the foreign court. 18 U.S.C. § 4106A(b)(1)(C). The Panamanian court sentenced Odili to a prison term of 100 months; therefore, the combined total of the term of imprisonment and supervised release period set by the Parole Commission was statutorily capped at 100 months.[3]

Odili's original transfer treaty determination provided that the applicable guideline period for supervised release was 36 to 60 months, pursuant to U.S.S.G. § 5D1.2(a)(1). On that basis, the Parole Commission fixed a supervised release term of the lesser of 60 months or the full-term date of his foreign sentence. Given Odili's 85-month release date, and not counting any good-time credits, the practical effect was that his supervised release term would be 15 months, or less than half of the applicable guideline minimum. Odili contends that when the

---

[3] That figure was a ceiling, not a floor. There is no requirement that the domestic sentence be identical to the foreign prison term, and it would have been permissible for the Parole Commission to impose combined prison and supervised release terms lower than the Panama prison sentence. *See Paura v. U.S. Parole Comm'n*, 18 F.3d 1188, 1190 (5th Cir. 1994) (finding error where Parole Commission decided that it was required to equate periods of imprisonment and supervised release to length of foreign sentence); 28 C.F.R. § 2.68(3) (recognizing that combined prison and supervised release terms may be less than full term imposed by foreign court). Although this option was not selected, nothing in the record suggests that the Parole Commission failed to appreciate that it was free to set Odili's combined prison and supervised release terms at a level below 100 months.

13

Parole Commission subsequently modified the release date from 85 to 81 months based on his cooperation with foreign authorities, it improperly boosted his supervised release period from 15 to 19 months. This premise is incorrect. The modified transfer treaty determination left Odili's supervised release provision unchanged. As before, Odili is obligated to serve a supervised release term of the lesser of 60 months or the full-term date of his foreign sentence. Thus, the Parole Commission did not increase his supervised release term when it modified his release date to account for foreign cooperation.

To be sure, Odili's effective supervised release term will now be 19 months, as compared to the 15 months it was previously; however, that figure remains but a fraction of the 60-month term set by the Parole Commission, subject to the § 4106A(b)(1)(C) ceiling. Under any reasonable reading of the original transfer treaty determination, the Parole Commission imposed on Odili a 60-month supervised release term, subject to and limited by the binding constraint of § 4106A. When the Parole Commission advanced the release date, the § 4106A constraint on the supervised release term was slightly relaxed, meaning that Odili could serve a greater portion of the 60-month term which the Parole Commission had sought to impose. That result is not properly characterized as an increase in his supervised release term. In any event, nothing in these circumstances

14

constitutes a violation of § 4106A or a failure of the Parole Commission to consider the § 3553(a) factors.[4]

More generally, to the extent that Odili is challenging the reasonableness of the supervised release term, we find that the Parole Commission did not act unreasonably in requiring him to serve a 19-month term of supervised release following an 81-month term of imprisonment for possessing with intent to distribute more than 7 kilograms of cocaine, a Class A felony ordinarily subject to a supervised release term of 36 to 60 months.

C. *The Drug Quantity Determination.*

Odili also maintains that the Parole Commission contravened *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), by making a finding of drug quantity attributable to him without such amount being charged in an indictment. In pre-hearing submissions, however, Odili's counsel advised the hearing examiner that "Mr. Odili fully accepts responsibility for the approximately seven kilos of cocaine found in the home of Pastor Rivera" (R6:10). In light of

---

[4] In addition to arguing that his supervised release term was improperly increased, Odili objects that the Parole Commission erred in failing to reduce the supervised release term concurrently with the acceleration of his release date. In particular, Odili suggests that had the Parole Commission applied the § 3553(a) factors, the modified transfer treaty determination would have lowered his supervised release term below 15 months. But the Parole Commission was under no duty, whether through § 3553 or any other provision, to effect any corresponding reduction in Odili's supervised release term simply because it advanced his release date by four months.

this admission, Odili cannot now be heard to object to the Parole Commission's attribution of that very drug quantity to him in computing a guidelines range. Besides, *Apprendi* provides that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Indeed, "in the context of federal drug cases, drug type and quantity do not have to be charged in the indictment or submitted to the jury for proof beyond a reasonable doubt" unless the defendant's sentence exceeds the prescribed statutory maximum. *United States v. Tinoco*, 304 F.3d 1088, 1100 (11th Cir. 2002). Odili was sentenced well below the 20-year default statutory maximum for 21 U.S.C. § 841(b), so there is no *Apprendi* violation here.

  *D.*  *Alleged* Booker *Error.*

  Odili also contends that the hearing examiner improperly treated the sentencing guidelines as mandatory, in derogation of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which was decided roughly three weeks before the transfer treaty hearing. *Booker* error can take the form of either constitutional error, when in a mandatory guidelines system the judge imposes a sentence above that authorized by facts found by the jury or admitted by the defendant, or statutory error, when the judge treats the sentencing guidelines as

16

binding for sentencing purposes, regardless of the sentence imposed. *E.g., United States v. Houston*, 456 F.3d 1328, 1339 (11th Cir. 2006). The latter form of error is invoked here.

Odili is correct that, for purposes of setting his release date under § 4106A, the Parole Commission was obliged to afford the guidelines only advisory weight.[5] Furthermore, because § 4106A directs the Parole Commission to effect transfer treaty determinations as though the offender were convicted in a United States district court of a similar offense, and because the § 4106A procedure is akin to a sentencing proceeding, the Parole Commission was required to consider the sentencing factors outlined in 18 U.S.C. § 3553(a). *See generally United States v. Scott*, 426 F.3d 1324, 1328 (11th Cir. 2005) ("Following *Booker* ... Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing.") (quotation omitted). Contrary to Odili's position, however, that is precisely what the Parole Commission did in this case.

---

[5] There is some question as to whether the Parole Commission was ever bound by the guidelines in making transfer treaty determinations. On its face, the statute requires the Parole Commission only to consider the applicable guideline range, not to adhere to it. 18 U.S.C. § 4106A(b)(1)(B)(i) (Parole Commission "shall consider" recommended guidelines range); *see Austin*, 448 F.3d at 201 (opining that the Parole Commission "was never bound by the Guidelines, and is only required to consider ... the applicable guideline range - the standard now familiar to every district court"). We need not decide that question, though, as the intersection of *Booker* and § 4106A renders it unmistakably clear that the Parole Commission must construe the sentencing guidelines as advisory for purposes of transfer treaty determinations.

Odili argues that the "totality of the transcript" reflects that the Parole Commission "did not perceive an advisory sentencing scheme," but instead erroneously applied the guidelines in a mandatory fashion. When pressed at oral argument, however, Odili's counsel correctly admitted that nothing in the record suggests that the hearing examiner applied the guidelines as binding.

More importantly, a close look at the hearing transcript and written recommendations shows that the Parole Commission did not consider the guidelines to be mandatory. Odili's release date was set 16 months earlier than the low end of the applicable guidelines range, based on several specific factors within the ambit of § 3553(a), to-wit: abuse and torture in a foreign prison,[6] the need to preserve adequate time for supervised release within the § 4106A constraints, Odili's tutoring assistance to other inmates, and his cooperation with Panamanian authorities. In imposing a release date shorter than the guidelines range based on these considerations, the Parole Commission was in fact weighing the § 3553(a) factors, albeit not by name. More generally, the record reflects that the hearing examiner deliberated at length concerning the nature and circumstances of the offense, Odili's history and characteristics, the kinds of

---

[6] We have previously observed that physical abuse and/or torture during a period of foreign incarceration may be an appropriate basis for setting release dates for transfer treaty prisoners below the applicable guidelines range. *Tramel*, 100 F.3d at 132.

18

sentences available, the advisory guidelines range, and the like. That she did not specifically identify each of these as § 3553(a) factors is of no consequence. *Scott*, 426 F.3d at 1329 (holding that "nothing in *Booker* or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors").

For these reasons, there was no *Booker* statutory error here. Moreover, the absence of any record basis for concluding that the Parole Commission applied the guidelines in a mandatory fashion, especially when coupled with Odili's admission that he is responsible for seven kilograms of cocaine, is fatal to any claims of *Booker* constitutional error that Odili may interpose.

### E. *Reasonableness.*

Undergirding Odili's objections to the Parole Commission's decision is his contention that the release date specified in the transfer treaty determination was unreasonable. Of course, we evaluate the sentence imposed below for reasonableness, with an eye towards assessing whether it achieves the objectives set forth in § 3553(a). *United States v. Arevalo-Juarez*, 464 F.3d 1246, 1249 (11th Cir. 2006); *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005). "The party challenging a sentence bears the burden of establishing unreasonableness in light of the § 3553(a) factors and the record established"

19

below.  *United States v. Wilks*, 464 F.3d 1240, 1245 (11th Cir. 2006).  These same principles guide our review of a § 4106A transfer treaty determination.  On the record before us, we conclude that the Parole Commission correctly calculated the guidelines range, considered the guidelines advisory, adequately took into account the factors set forth in 18 U.S.C. § 3553(a), and imposed a release date substantially below the low end of the guidelines range.  Accordingly, Odili's sentence was reasonable in light of the record and the § 3553(a) factors.

## IV.  CONCLUSION

For the reasons stated, we discern no error in the Parole Commission's determinations concerning the release date and supervised release period for Odili pursuant to 18 U.S.C. § 4106A.

**AFFIRMED**.